[877 NYS2d 16]

In the Matter of BARBARA N., Appellant, v JAMES H.N., Respondent.

First Department, March 31, 2009

## APPEARANCES OF COUNSEL

*Stern & Zingman, LLP,* New York City (*Joel S. Stern* of counsel), for appellant.

*Dreier, LLP,* New York City (*Donald Lockhart Schuck* and *Elana F. Sinensky* of counsel), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

The principal issue is whether petitioner is precluded from seeking to modify the terms of an agreement providing for the support of her nonmarital child because of the constraints of Family Court Act § 516 (a).

Petitioner became pregnant after a brief relationship with respondent that had ended by the time she gave birth in September of 1991. In 1992, the parties negotiated a child support agreement which was conditioned upon positive blood test results establishing respondent's paternity. The agreement provided, among other things, for respondent to pay a total of $126,050 in installments over a period of nine years, to cover support, child care, education, medical (past and future) and all other expenses of the child until she reached age 21, and was submitted to the Family Court for approval as required by Family Court Act § 516 (a). Notice of the petition for approval of the agreement was served on the Commissioner of Social Services pursuant to section 516 (b). The parties, each represented by counsel, along with a representative from Social Services, appeared before a Hearing Examiner who reviewed the agreement and made some changes not relevant to this appeal. The Hearing Examiner requested that the guideline calculation of the Child Support Standards Act (CSSA) be added to the agreement. At that point, the parties exchanged financial disclosure affidavits for the first time.

Respondent's annual child support obligation under the guidelines was calculated to be $21,052. The parties agreed,

however, that in lieu of the support provisions required by CSSA, respondent would make certain lump sum payments and payments for medical coverage, and that these would best serve the interests of the child. Petitioner specifically agreed that the agreement was in compliance with CSSA, and waived any right to future child support under that statute.

The Hearing Examiner reviewed the changes to the agreement made by the representative from Social Services, and the CSSA child support calculation, and then made a brief inquiry of the parties as to whether they understood the changes and their obligations under the agreement. After the parties answered in the affirmative, he then approved the agreement. Shortly thereafter, respondent acknowledged paternity and an order of filiation was entered by the court. The order incorporated by reference the support agreement. It is undisputed that respondent has made all payments required under that agreement.

In January 2007, petitioner commenced this proceeding to vacate the 1992 order and conduct a new hearing for purposes of issuing a new support order. She claims that the 1992 support agreement did not comply with the provisions of Family Court Act § 516. She also argues that the statute was unconstitutional because it discriminates between children born in wedlock and outside wedlock, in that a child born to married parents is eligible for an upward modification of child support under the formula set forth in Family Court Act § 413 (1) (c), but section 516 (c) bars such reevaluation for nonmarital children where a support agreement approved by the court under section 516 (a) is completely performed. Prior to serving his answer, respondent moved to dismiss the petition on the grounds that he had completely performed his obligations under the agreement.

The matter was referred to a Support Magistrate, who directed the petition be dismissed "due to no prima facie change of circumstances." Petitioner filed an objection, which the Family Court denied. The court dismissed that part of the motion which sought to have section 516 declared unconstitutional.

Since review of the record leads to the conclusion that the Hearing Examiner failed to comply with the requirements of section 516 in approving the 1992 agreement, we reverse and direct a new hearing, at which the burden will be upon the petitioner to establish that the support obligations no longer provide for the best interests of the child.

Section 516 of the Family Court Act allows a mother and putative father of a nonmarital child to settle a paternity proceeding by entering into a binding support agreement, but only when the court determines that adequate provision has been made for the support of the child, and it approves the agreement. Even though the statute does not outline any particular line of inquiry for determining the adequacy of the support provisions, "courts have generally considered the parties' financial positions, the child's support and educational needs throughout childhood and the interests of the State" (*see Matter of Clara C. v William L.*, 96 NY2d 244, 250 [2001]). The purpose of requiring court inquiry into the adequacy of the support provision is "to ensure that the needs of nonmarital children are adequately met and are not contracted away by their mothers, whose interests may not always coincide with those of their children" (*id.* at 249). Such scrutiny "prevents overreaching by the parties and safeguards the interests of children, who . . . may not be represented by a law guardian" (*id.* at 249-250).

Although the Hearing Examiner in this case purportedly reviewed the agreement and the CSSA calculations, it is evident that the agreement did not provide for adequate support for the child for 21 years. Concededly, there is no requirement that the agreement provide for support in accordance with the amount set forth in the CSSA guidelines. Nevertheless, the lump sum payment of $126,050 (to be paid over a period of nine years), averages out to approximately $6,000 per year for 21 years, while the calculation under the CSSA would have provided for $21,054 in annual basic child support, even without factoring in any statutory add-ons. The gross disparity between the two figures should at least have prompted the Hearing Examiner to conduct further inquiry. While the agreement may have been in the best interests of the parents, it clearly was not in the best interests of the child, whom the Hearing Officer was obligated to protect.

As was noted by the Court of Appeals, where there has not been proper judicial review and approval of an agreement for compliance with the provisions of section 516, the agreement may not be used to preclude a later proceeding to modify the support provisions (*Clara C.* at 250). Accordingly, this matter must be remanded for further proceedings on petitioner's application for modification of the 1992 child support agreement.

In view of the foregoing, we need not address the issue of the constitutionality of Family Court Act § 516. We note, nevertheless, that even though the statute was found to be constitutional

in *Bacon v Bacon* (46 NY2d 477 [1979]), the majority in *Clara C.* declined to reaffirm its holding in *Bacon*. It pointedly observed that in view of the principles of judicial restraint, it would not "pass upon the continuing viability" of its determination in *Bacon* (*Clara C.* at 250). The three concurring Judges, however (none of whom are currently on the bench—Levine, G.B. Smith and Wesley, JJ.), indicated that they would find that the treatment of nonmarital children under section 516, by precluding them from being able to petition for a modification of child support agreements, could not survive equal protection analysis (*id.* at 258). The concurring Judges reasoned that subsequent legal developments since the decision in *Bacon*, as well as advances in the tests used to determine paternity, had undermined the rationale of treating nonmarital children differently from marital children, for whom modifications in support agreements could be sought under section 413 (1) of the Family Court Act.

Furthermore, the United States Supreme Court has on various occasions struck state classifications which more favorably treated children of married parents than of nonmarital parents. In *Gomez v Perez* (409 US 535 [1973]), it found unconstitutional a Texas statute which granted only marital children a judicially enforceable right to support. In pertinent part, the Court stated, "once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because [the] natural father has not married [the] mother" (*id.* at 538).

Thus, while we need make no determination as to the statute's constitutionality, we observe that, to the extent the statute precludes attempts to reverse support agreements for nonmarital children, its constitutionality is questionable.

Accordingly, the order, Family Court, New York County (Sara P. Schechter, J.), entered on or about August 17, 2007, which, inter alia, denied petitioner's objection to an order (Support Magistrate Solange N. Grey), entered June 11, 2007, which dismissed without prejudice the petition seeking to vacate a 1992 child support agreement, to direct a new hearing, and to replace the child support agreement with a new schedule of support, should be reversed, on the law, without costs, and the petition granted to the extent of remanding the matter for a hearing on petitioner's application for modification of the 1992 child support agreement.

MAZZARELLI, J.P., ANDRIAS, BUCKLEY and FREEDMAN, JJ., concur.

Order, Family Court, New York County, entered on or about August 17, 2007, reversed, on the law, without costs, and the petition granted to the extent of remanding the matter for a hearing on petitioner's application for modification of the 1992 child support agreement.