## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: September 19, 2012                    Decided: July 30, 2014)

Docket No. 11-3225-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MELISSA STAMPF,

*Plaintiff-Appellee*,

v.

THE LONG ISLAND RAILROAD COMPANY, METROPOLITAN TRANSPORTATION AUTHORITY and JAMES SOKIRA,

*Defendants,*

ANGELA TRIGG,

*Defendant-Appellant,*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: KATZMANN, *Chief Judge*, LEVAL, and LIVINGSTON, *Circuit Judges*.

Defendant Angela Trigg appeals from the judgment of the United States District Court for the Eastern District of New York (Gold, *M.J.*) awarding Plaintiff Melissa Stampf $480,000 in compensatory and punitive damages on her claim of malicious prosecution and denying Trigg's motions for judgment as a matter of law, a new trial, and remittitur. The Court of Appeals (Leval, *J.*) concludes that the district court did not err in denying Trigg's motions for judgment as a matter of law and for a new trial on liability. The Court also concludes that the jury's award of damages is excessive. The district court's denial of Trigg's motion seeking a new trial on damages is REVERSED unless Stampf accepts a remittitur reducing her award.

PHILIP J. DINHOFER, Philip J. Dinhofer, LLC.,
Rockville Centre, New York, for *Plaintiff-Appellee*.

BRIAN KENNETH SALTZ, for Catherine A. Rinaldi,
Vice President/General Counsel & Secretary, The
Long Island Rail Road Company, Jamaica, New
York, for *Defendant-Appellant*.

LEVAL, *Circuit Judge*:

Defendant Angela Trigg appeals from the judgment of the United States District Court for the Eastern District of New York (Gold, *M.J.*) awarding Plaintiff Melissa Stampf damages on her claim of malicious prosecution. Trigg contends that the district court erred in denying her motions (1) for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and 50(b), (2) for a new trial on all issues pursuant to Fed. R. Civ. P. 59, and (3) for a new trial on damages unless Stampf accepts a remittitur reducing the amount of the judgment.

Stampf brought this suit in federal court against her coworker Trigg, their employer The Long Island Rail Road ("LIRR") and other defendants asserting violations of the Federal Employers Liability Act ("FELA") and 42 U.S.C. § 1983; state law claims of false arrest, malicious prosecution, negligent and intentional infliction of emotional distress; and violations of state and city human rights laws. With the exception of Stampf's New York state law claim for malicious prosecution against Trigg (the only claim that concerns us on this appeal) and her discrimination claims against the LIRR, the district court granted summary judgment dismissing all of Stampf's claims. Upon trial, the jury found Trigg liable for malicious prosecution and awarded Stampf damages of $200,000 for past mental and emotional suffering, $100,000 for future mental and emotional suffering, $30,000 as compensation for out-of-pocket losses, and $150,000 as punitive damages, totaling $480,000.

2

We affirm the district court's denial of Trigg's motions for judgment as a matter of law and for a new trial on liability. However, we conclude that the jury's award of damages exceeded limits reasonably allowable in the district court's discretion. Accordingly, we reverse the district court's denial of Trigg's motion seeking a new trial on damages unless Stampf accepts a remittitur reducing the amount of the judgment.

## BACKGROUND

### I.      Factual Background

Plaintiff Stampf and defendant Trigg were both employed for over ten years as locomotive engineers by the LIRR at the time of the relevant incident. On July 10, 2006, Trigg complained to a supervisor (and filed an internal report) of an assault on her by Stampf. Trigg asserted that, on the previous day, while she was sitting in her car in the workplace parking lot with another LIRR employee, Stampf "reache[d] in[to the car] and grab[bed Trigg's] breast and jiggle[d it]." Joint App'x ("JA") at 1245, *Stampf v. Long Island R.R. Co.*, No. 11-3225 (2d Cir. Nov. 2, 2011). Stampf has maintained that she squeezed Trigg's shoulder, not her breast.

Three weeks later (on August 1, 2006), Trigg repeated the allegation in a voluntary statement to the Metropolitan Transportation Authority police (the "MTA" police). She stated that, on July 9, 2006, Stampf "reached her hand in my car window and grabbed my left breast and shook it." JA at 1221. On August 2, Trigg informed MTA Police Officer James Sokira that she had filed a report against Stampf with the police. Officer Sokira reported this to his supervisor, who directed him to arrest Stampf. That night, Officer Sokira arrested Stampf while she was at work. In front of Trigg and other co-workers, Stampf was handcuffed and placed in a police car.

3

Shortly after the arrest, Trigg filed a second report with the MTA police stating that Stampf "reache[d] in the window and grab[bed] my left breast and [j]iggle[d]" and then, after a brief argument about the incident, Stampf "reache[d] in the window again across my chest . . . ." JA at 1240-41. Describing the night of Stampf's arrest, Trigg's second statement to the police said that, "on August 2 . . . when [Stampf] showed up [at work,] I flagged down the MTA police and made them aware of the case and asked them [to] arrest [Stampf] for the incident that happened on July 9, 2006."[1] JA at 1242. Trigg's statement added, "I have decided to press charges against Melissa Stampf." JA at 1242.

Stampf was held in a locked cell for approximately four hours. She was then issued a desk appearance ticket ("DAT"), which listed Forcible Touching as the offense charged, and released. Stampf hired an attorney to handle the potential criminal charges. She testified that she paid the attorney a $25,000 fee, which was financed by her father taking out a second mortgage, on which she makes the payments.

No criminal complaint was ever filed against Stampf. On December 27, 2006, the New York County District Attorney's Office issued a declination of prosecution, explaining, "Following a review of the evidence and interviews with several witnesses, including the complaining witness, the People conclude that the case [cannot] be proven beyond a reasonable doubt." JA at 1061.

Meanwhile, in response to Trigg's complaint to her supervisor, the LIRR conducted an investigation in July and August 2006 and found that Stampf had violated its Anti-Harassment Policy. Stampf provided a statement of facts to the LIRR in advance of its investigation and was

---

[1]At trial, Trigg testified that she did not ask for Stampf to be arrested. JA at 574.

given the opportunity to testify in her defense. Following the advice of her attorney, she declined to testify because she might face criminal charges in which her statement could be used against her. Stampf was assessed a twenty-day suspension without pay. On September 12, 2008, an arbitration panel convened pursuant to the Railway Labor Act and affirmed the employer's determination that Stampf violated the Anti-Harassment Policy, but reduced the suspension to ten days and awarded Stampf compensation for lost time.

**DISCUSSION**

On appeal, Trigg contends the malicious prosecution judgment against her was flawed in numerous respects. First, she asserts that she cannot be liable for malicious prosecution as a matter of law because (1) she did not initiate a criminal proceeding against Stampf; (2) even if the issuance of a DAT constitutes the initiation of a criminal proceeding, the proceeding did not terminate in Stampf's favor; and (3) Stampf was collaterally estopped from claiming malicious prosecution by the LIRR's arbitration decision. Second, Trigg argues that she is entitled to a new trial because the district court improperly (1) admitted evidence of her prior sexual behavior in violation of Federal Rule of Evidence Rule 412; (2) denied her request to admit evidence of an arbitration award; and (3) refused to admit the testimony of the assistant district attorney as to whether a declination of prosecution indicates that a defendant is innocent. Third, she contends she was entitled to an order of remittitur because of the excessiveness of the jury's award.

**I. The District Court Did Not Err in Denying Trigg's Motions for Judgment as a Matter of Law**

We review the denial of motions for judgment as a matter of law de novo. *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 326 (2d Cir. 2010). Under Rule 50, a court may

5

grant judgment as a matter of law against a party if "a reasonable jury would not have a legally sufficient evidentiary basis to find for [that] party on that issue." Fed. R. Civ. P. 50(a); *Highland Capital Mgmt. LP*, 607 F.3d at 326. A court may set aside a jury's verdict "only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 127-28 (2d Cir. 2012) (internal quotation marks and citation omitted). In reviewing a Rule 50 motion, we "give deference to all credibility determinations and reasonable inferences of the jury, and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Id.* (internal quotation marks and citation omitted).

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotations marks and citations omitted); *see Broughton v. State*, 37 N.Y.2d 451, 457 (1975). Trigg contends that Stampf failed to prove the first two elements.

### a. Trigg Initiated a Criminal Proceeding Against Stampf

#### i. The Issuance of a DAT Initiates a Criminal Proceeding for the Purposes of a Malicious Prosecution Claim

Trigg first argues Stampf failed to satisfy the essential elements of malicious prosecution because the issuance of a DAT does not initiate a criminal proceeding, as required for such a claim. While recognizing that the answer is not clearly established in New York law, we disagree.

In *Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1249-50 (2d Cir. 1979), in the absence of controlling New York precedent, this court concluded that a New York court "would rule that the issuance of [a Desk] Appearance Ticket commences a prosecution for purposes of determining whether an action for malicious prosecution lies." *Rosario*, 605 F.2d at 1250. The *Rosario* court reasoned:

> [When a DAT is issued,] the accused bears the inconvenience and expense of appearing in court and, perhaps more important, is subject to the anxiety induced by a pending criminal charge. Moreover, if others learn that charges have been lodged against the accused, his character is no less traduced because the accusation is contained in an Appearance Ticket rather than in a summons.

*Id.*

Trigg urges us to reject our holding in *Rosario* in light of the subsequent New York Civil Court decision in *McClellan v. New York City Transit Authority*, 444 N.Y.S.2d 985 (Civ. Ct., Kings Co. 1981). *McClellan* ruled "that the issuance of a D.A.T. [by the police], without a concomitant filing of an accusatory instrument, or other judicial intervention, is not the commencement of a criminal action and cannot support a cause of action for malicious

prosecution." *Id.* at 986. The court noted its "respectful[] disagree[ment] with the United States Court of Appeals for the Second Circuit." *Id.* at 987 (citing *Rosario*, 605 F.2d 1228).

However, the Appellate Division, Fourth Department has explicitly declined to follow *McClellan* and instead adopted *Rosario*'s reasoning, holding that a DAT was sufficient to support a claim of malicious prosecution. *See Snead v. Aegis Sec., Inc.*, 482 N.Y.S.2d 159, 160-61 (4th Dep't 1984). Likewise, in reversing the dismissal of a malicious prosecution claim, the Third Department, citing *Snead*, treated the issuance of a DAT as constituting initiation of a criminal proceeding. *Allen v. Town of Colonie*, 583 N.Y.S.2d 24, 26 (3d Dep't 1992).

Trigg also relies on the Second Department's ruling in *Stile v. City of New York*, 569 N.Y.S.2d 129 (2d Dep't 1991), which dismissed a malicious prosecution claim on the ground that "[s]uch a claim may arise only after an arraignment or indictment or some other evaluation by a neutral body that the charges [were] warranted." 569 N.Y.S.2d 129, 131 (2d Dep't 1991) (second alteration in original) (internal quotation marks and citations omitted). However, *Stile* is not on point because the plaintiff in that case was not issued a DAT or any other command to appear in court.

We recognize that several courts of first instance, following the language of *Stile,* have ruled that a DAT does not initiate a criminal proceeding. *See Puckowitz v. City of New York*, No. 09 Civ. 6035(PGG), 2010 WL 3632692, at *5 (S.D.N.Y. Sept. 17, 2010); *Garrett v. Port Auth. of New York & New Jersey*, No. 04 Civ. 7368(DC), 2006 WL 2266298, at *7 (S.D.N.Y. Aug. 8, 2006) (quoting *Katzev v. Newman*, No. 96 Civ. 9138(BSJ), 2000 WL 23229, at *4 (S.D.N.Y. Jan. 12, 2000)); *Levenson v. Nussbaum*, No. 17045/09, 2011 N.Y. Misc. LEXIS 1834, at *8-9 (Sup. Ct. Nassau Cnty. Apr. 8, 2011). Nonetheless, in view of the fact that the Second

8

Department has never held that a DAT does not initiate a criminal proceeding for the purposes of a malicious prosecution claim, and that the Third and Fourth Departments in *Snead* and *Allen* held, in accordance with *Rosario,* that it does, we adhere to the position we took in *Rosario* that, under New York law, the issuance of a DAT sufficiently initiates a criminal prosecution to sustain a claim of malicious prosecution.

### ii. Trigg Played a Role in Initiating the Criminal Proceeding

Next, Trigg contends that Stampf presented no evidence that Trigg played a role in the issuance of the DAT. *See Krzyzak v. Schaefer*, 860 N.Y.S.2d 252, 253 (3d Dep't 2008) (affirming the dismissal of the plaintiff's malicious prosecution claim because "the record does not reveal any evidence of defendant's active involvement in the prosecution of plaintiff following the signing of the complaint"). The DAT lists Stampf's offense as "forcible touching" which, under New York Penal Law § 130.52, occurs when a person "forcibly touches the sexual or other intimate parts of another person *for the purpose of degrading or abusing such person; or for the purpose of gratifying the actor's sexual desire*." N.Y. Penal Law § 130.52 (emphasis added). Trigg points out that neither of the written statements that she provided to the MTA police state that Stampf grabbed Trigg's breast for the purposes listed in the penal law. JA at 1221-22, 1240-42. These statements, according to Trigg, should not have resulted in the police issuing a DAT for forcible touching.

In order to initiate a criminal proceeding for the purposes of a malicious prosecution claim, Trigg need not have explicitly named each element of a particular crime, as Trigg's argument implies. Instead, "it must be shown that [the] defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act."

9

*Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (quoting *DeFilippo v. Cnty. of Nassau*, 583 N.Y.S.2d 283, 284 (2d Dep't 1992) (internal quotation marks omitted). This was amply shown. *See TADCO Constr. Corp. v. Dormitory Auth. of New York*, 700 F. Supp. 2d 253, 270 (E.D.N.Y. 2010) ("Giving information to the police that is known to be false qualifies as the commencement of a prosecution.") (internal quotation marks and citation omitted); *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 146 (1st Dep't 2002) ("[I]t is true that a defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest . . . .") (dictum). In any event, even if Trigg did not explicitly say that Stampf acted for the purpose of abusing or degrading her or gratifying sexual desires, her accusation implicitly supports such an inference.

### b. The Proceeding Terminated in Stampf's Favor

Next, Trigg contends that, even if the DAT initiated a proceeding against Stampf, the proceeding was never terminated in Stampf's favor, as required to support a claim of malicious prosecution.

On December 27, 2006, the District Attorney of the County of New York issued a declination of prosecution which stated:

> The New York County District Attorney's Office declines to prosecute this action against Melissa Stampf at this time.

> Following a review of the evidence and interviews with several witnesses, including the complaining witness, the People conclude that the case can not be proven beyond a reasonable doubt. Consequently, the New York District Attorney's Office declines to prosecute this action at this time.

JA at 1061.

Trigg contends that the Declination did not terminate the proceeding because, as Assistant District Attorney Kern testified at trial, the Declination did not prohibit the District Attorney from reinstating the prosecution. Trigg cites the New York Court of Appeals' statement that "any final termination of a criminal proceeding in favor of the accused, such that the proceeding cannot be brought again, qualifies as a favorable termination for purposes of a malicious prosecution action." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (2000). However, the Court of Appeals also stated in *Smith-Hunter* that "[a] dismissal *without prejudice* qualifies as a final, favorable termination if the dismissal represents 'the formal abandonment of the proceedings by the public prosecutor' . . . ." *Id.* at 198 (emphasis added) (quoting Restatement (Second) of Torts § 659(c)). Thus, *Smith-Hunter* does not establish the rule urged by Trigg. Likewise, in *Verboys v. Town of Ramapo*, 785 N.Y.S.2d 496 (2d Dep't 2004), the Second Department held that a jury could find that a criminal proceeding was terminated in the plaintiff's favor where, "*although the initial criminal proceeding against the plaintiff . . . was dismissed without prejudice*, the record demonstrates that the prosecution undertook a full investigation and elected not to proceed with the charges because it determined that the allegations against the plaintiff were not supported by the evidence." *Id.* at 497 (emphasis added).

Trigg argues that, even if the criminal proceeding was finally terminated, it was not terminated in Stampf's favor because the disposition does not indicate Stampf's innocence. To support this point, Trigg relies on language from *MacFawn v. Kresler*, 88 N.Y.2d 859, 860 (1996) stating, "A criminal proceeding terminates favorably to the accused, for purposes of a

malicious prosecution claim, when the final disposition of the proceeding involves the merits and indicates the accused's innocence."

However, in *Smith-Hunter*, the Court of Appeals described this language from *MacFawn* as dicta and "reject[ed] the notion—as contrary to the common law and our longstanding precedents—that . . . [a] plaintiff must demonstrate innocence in order to satisfy the favorable termination prong of the malicious prosecution action." 95 N.Y.2d at 198-99. The court read *MacFawn* narrowly to "stand only for the proposition that dispositions inconsistent with innocence . . . cannot be viewed as favorable to the accused." *Id.* at 199; *see also Cantalino v. Danner*, 96 N.Y.2d 391, 392 (2001) (holding that a dismissal in the interest of justice was a favorable termination for the purposes of a malicious prosecution action where "the court's reasons for dismissing the criminal charges were not inconsistent with the innocence of the accused").

If the law were as Trigg argues, it would mean that malicious prosecution claims often could not be brought in the cases where the accusations had the least substance. The cases that most lack substance are most likely to be abandoned by the prosecution without pursuing them to judgment. On Trigg's view, the most unjustified accusations might thus be the most likely to be shielded from malicious prosecution claims. We believe that, under New York law, a declination as received by Stampf suffices to establish termination in the plaintiff's favor notwithstanding that the prosecutor is theoretically capable of resurrecting the prosecution.

### c. Stampf Was Not Collaterally Estopped from Claiming Malicious Prosecution

Trigg also appeals from the denial of her motion for judgment as a matter of law on the ground that the arbitration award collaterally estopped Stampf from prevailing on her malicious

prosecution claim. As the court held below, Trigg waived this argument by failing to raise it in her Rule 50(a) motion. *See* Fed. R. Civ. P. 50 Advisory Committee Note (2006) ("Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion."); *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001) ("The posttrial motion [for judgment as a matter of law] is limited to those grounds that were specifically raised in the prior motion for [judgment as a matter of law]; the movant is not permitted to add new grounds after trial." (internal quotation marks omitted)).[2]

II.     **The District Court Did Not Err in Denying Trigg's Motion for a New Trial**

Trigg contends the district court erred in denying her motion for a new trial on liability. Trigg argues that the court erred in (1) not allowing Trigg to introduce the arbitration decision as evidence in the trial, (2) admitting evidence of her prior sexual behavior, and (3) prohibiting the

---

[2] Trigg requests, in the alternative, that we consider her collateral estoppel argument as an appeal from the court's denial of her motion for summary judgment and motion for reconsideration. In general, "where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed . . . ." *Schaefer v. State Ins. Fund*, 207 F.3d 139, 142 (2d Cir. 2000) (citation omitted); *see also Ortiz v. Jordan*, 131 S. Ct. 883 (2011). We have recognized an exception to this rule and permitted appeals from the denial of summary judgment after a full trial on the merits "where the district court's error was purely one of law." *Schaefer*, 207 F.2d at 142. In *Ortiz*, the Supreme Court did not permit petitioners to appeal an order denying summary judgment after a full trial on the merits without addressing whether an appeal may lie from a denial of summary judgment when the asserted error is purely one of law because the questions raised on appeal did not present "neat abstract issues of law." 131 S. Ct. at 893. The Court noted that cases "present[ing] purely legal issues capable of resolution with reference only to undisputed facts . . . typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." *Id.* at 892.

Trigg's appeal does not raise a purely legal claim of error. Whether Stampf was collaterally estopped from bringing her malicious prosecution claim turns, in part, on whether she received a full and fair opportunity to litigate whether Stampf improperly touched Trigg's breast. *See LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("New York courts apply collateral estoppel . . . if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action." (internal quotation marks omitted)). Although collateral estoppel generally raises questions of law, the appraisal of whether the opportunity to litigate has been sufficiently adequate to support preclusion is a fact-based inquiry. *See Staatsburg Water Co. v. Staatsburg Fire Dist.*, 72 N.Y.2d 147, 153 (1988) ("[T]he analysis [for whether a party had a full and fair opportunity to contest the prior decision] requires consideration of 'the realities of litigation' . . . ."). Therefore, Trigg is precluded from appealing from the denial of her summary judgment motion and motion for reconsideration.

assistant district attorney from testifying as to whether the Declination of Prosecution implied Stampf's innocence.

A district court may grant a motion for new trial under Rule 59 if "the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (alternation in original) (internal quotation marks and citation omitted). A new trial may be warranted "if substantial errors were made in admitting or excluding evidence." *Sharkey v. Lasmo (AUL Ltd.)*, 55 F. Supp. 2d 279, 289 (S.D.N.Y. 1999). We review a district court's denial of a motion for a new trial, as well as a district court's evidentiary rulings, for abuse of discretion. *Nimely*, 414 F.3d at 392-93.

**a.  Admissibility of the Arbitration Decision**

In rejecting Trigg's offer of the arbitration decision as evidence at trial, the district court reasoned that Stampf was not afforded a sufficient degree of procedural fairness during the arbitration to justify admitting the decision as evidence. *Stampf v. Long Island R.R. Auth.*, No. Cv-07-3349(SMG), 2010 U.S. Dist. LEXIS 121329, at \*5-7 (E.D.N.Y. Nov. 16, 2010); *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60 n.21 (1974)[3] ("We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include . . . the degree of procedural fairness in the arbitral forum . . . ."). The district court noted that Stampf's choice not to testify because of her pending criminal proceedings "is a particularly

---

[3] In *Alexander*, the Supreme Court also opined that arbitration was inferior to judicial proceedings for resolving certain statutory claims. *Alexander*, 415 U.S. at 56-58. The Court subsequently undermined that view, noting that the "mistrust of the arbitral process" as expressed in *Alexander* "has been undermined by . . . recent arbitration decisions." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 34 n.5 (1991) (quoting *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 231-232 (1987)).

important factor in this case because the dispute over the events of July 9, 2006 essentially boils down to a credibility contest between Trigg and Stampf." *Stampf*, 2010 U.S. Dist. LEXIS 121329, at *6.

District courts enjoy substantial latitude in making evidentiary rulings of this nature. In our view, the court did not abuse its discretion by excluding the arbitration decision. *See, e.g.*, *United States v. Robinson*, 702 F.3d 22, 36 (2d Cir. 2012) ("We review a district court's evidentiary rulings with deference, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice." (internal quotation marks and citation omitted)).

### b. Evidence of Trigg's Prior Sexual Behavior

Trigg also challenges the district court's receipt of testimony to the effect that Trigg was a regular participant in a culture of sexually tinted locker room jocularity among LIRR employees, which included cat calling at a co-worker seen wearing shorts, butt slapping, and chest rubbing. For example, a male employee, Matthew Schrader, testified that one day Trigg "brushed up against me and kind of touched my behind. And I didn't think anything of it because that's what people would do every day there." JA at 326. He also testified, "[T]here were numerous other occasions when she would come in and she would cat call me because sometimes I will wear shorts to work. . . . She would make comment about my legs, come and rub my shoulders or my chest or something like that." *Id.* at 328. In addition, he confirmed that she had hugged him and rubbed her breasts on him. Another employee, Glenis Holland, testified that she had seen Trigg "slap a male conductor on the rear end." JA at 294.

Trigg contends the admission of this evidence violated Federal Rule of Evidence 412(a), which makes inadmissible "in a civil or criminal proceeding involving alleged sexual misconduct: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R. Evid. 412(a).

The rule, however, is not categorical or absolute. Rule 412(b)(2), under the caption "Exceptions," provides that "[i]n a civil case, the court may admit evidence [of] a victim's sexual behavior . . . if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). We assume without deciding that Rule 412 applies to this case, in which the defendant was charged with falsely accusing the plaintiff of sexual misconduct and the defendant responded that she was in fact a victim of the plaintiff's sexual misconduct. *See* Fed. R. Evid. 412 Advisory Committee Note (1994) ("Rule 412 applies in any civil case in which a person claims to be the victim of sexual misconduct . . . ."). We nevertheless conclude that the district court did not abuse its discretion in admitting the evidence. The district court determined that Trigg's own indulgence in sexually provocative touching in the workplace, which furthermore was commonplace among her workplace colleagues, was highly probative as to whether Trigg's report to the police was motivated by actual malice or rather (as she claimed) by genuine fear for her own safety. *See* *Manganiello*, 612 F.3d at 163-64 (describing the actual malice element of a malicious prosecution claim). It also determined that the evidence at issue was not particularly prejudicial. We see no abuse of discretion in the district court's weighing of these factors under Rule 412(b)(2).

### c. Testimony of ADA Kern

Trigg protests the District Court's exclusion of her question addressed to Assistant District Attorney Kern as to whether a declination of prosecution indicates that a defendant is innocent. The District Court sustained Stampf's objection to the question not on the grounds of relevance, but because it called for expert testimony and Trigg had failed to make pretrial disclosure of an intention to elicit this expert testimony from Kern as required by Federal Rule of Civil Procedure 26(a)(2). We find no fault with the court's ruling.

### III. Trigg's Motion for Remittitur Should Be Granted

Trigg appeals from the district court's denial of her motion for remittitur on each of her jury awards: $200,000 for past emotional distress, $100,000 for future emotional distress, $30,000 in economic damages, and $150,000 in punitive damages. "Remittitur is the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Shu-Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir. 1984). In considering motions for a new trial and/or remittitur, "[t]he role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 435 (1996) (quoting *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989)).

Under New York law, a court "shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." N.Y.

C.P.L.R. § 5501(c); *Okraynets v. Metro. Transp. Auth.*, 555 F. Supp. 2d 420, 439 (S.D.N.Y. 2008) ("[T]he standard under § 5501(c) is not whether an award deviates *at all* from past awards—it is whether an award deviates *materially* from *reasonable compensation.*"). To determine whether a jury award is excessive within the meaning of § 5501(c), New York courts compare it with awards in similar cases. *Gasperini*, 518 U.S. at 425 (citing *Leon v. J & M Peppe Realty Corp.*, 596 N.Y.S.2d 380, 389 (1st Dep't 1993); *Johnston v. Joyce*, 596 N.Y.S.2d 625, 626 (4th Dep't 1993).

Applying the federal standard of review, we review a district court's denial of remittitur for abuse of discretion. *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 258 (2d Cir. 2005); *see Gasperini*, 518 U.S. at 438. When reviewing a trial court's decision for abuse of discretion, the degree of deference we give to the trial court depends on the type of case being reviewed. *Payne v. Jones*, 711 F.3d 85, 100 (2d Cir. 2013) (citing Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 764 (1982) ("Some cases call for application of the abuse of discretion standard in a 'broad' sense and others in a 'narrow' one."). In *Dagnello v. Long Island R.R. Co.*, 289 F.2d 797 (2d Cir. 1961), we articulated a discerning standard of review for a trial court's denial of a motion for a new trial or remittitur:

> If the question of excessiveness is close or in balance, we must affirm . . . . We must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact with respect to which reasonable men may differ, but a question of law.

*Payne*, 711 F.3d at 97-98 (quoting *Dagnello*, 289 F.2d at 806); *see also Grunenthal v. Long Island R.R. Co.,* 393 U.S. 156, 159-60 (1968) (Brennan, *J.*) (applying *Dagnello* without passing

on its correctness); *id.* at 165 (Stewart, *J.,* dissenting) ("I believe this standard of judicial review is the correct one and can think of no better way to verbalize it."). Under this articulation of the standard, "the discretion of the trial court on excessiveness is subject to substantial constraints." *Payne*, 711 F.3d at 97-98. In applying the *Dagnello* standard, we are required "to make a detailed appraisal of the evidence bearing on damages." *Grunenthal*, 393 U.S. at 159.

### a. Damages for Mental and Emotional Distress

Awards for mental and emotional distress are inherently speculative. There is no objective way to assign any particular dollar value to distress. Nonetheless, as we explained in discussing a claim of excessive punitive damages in *Payne*, "a legal system has an obligation to ensure that such awards for intangibles be fair, reasonable, predictable, and proportionate." 711 F.3d at 93. When a jury undertakes to assess a plaintiff's mental and emotional distress, it has nothing on which to base its valuation "other than the instincts of the jurors and random, often inaccurate, bits of information derived from press accounts or word of mouth in the community about how such intangibles have been valued in other cases." *Id.* Excessive awards for psychological and emotional distress not only disproportionally inflict harm on the tortfeasor and his or her dependants, they also impose burdensome costs on society. As we explained in *Payne*:

> [A]n excessive verdict that is allowed to stand establishes a precedent for excessive awards in later cases. . . . Unchecked awards levied against significant industries can cause serious harm to the national economy. Productive companies can be forced into bankruptcy or out of business. Municipalities can be drained of essential public resources. The threat of excessive damages, furthermore, drives up the cost of insurance premiums, deters both individuals and enterprises from undertaking socially desirable activities and risks, and encourages overspending on 'socially excessive precautions' that 'cost[ ] more than the reduction of harm

produced by [them].' A. Mitchell Polinsky & Steven Shavell, *Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869, 879 (1998). The prices of goods and services will rise, and innovation will be inhibited.

*Id.* at 94 (alterations in the original).

"While judges have no greater ability than jurors to determine any *correct* amount of [subjective] damages . . . , judges do have far greater familiarity with the experience of the legal system . . . [and] have a better awareness than do juries whether a particular award is consistent with the norms that prevail in that system." *Id.* at 96. Furthermore, it follows inevitably that if courts regularly approve amounts of awards that they would deem excessive under *de novo* review, in order to give deference to the jury, then the baseline of reasonableness will be constantly forced upward. This is, in part, because the awards on which information is most easily available are those challenged by defendants as excessive and, thus, reported in judicial opinions. Smaller awards are not usually challenged and, therefore, are not usually reflected in judicial opinions. Because courts look to judicial opinions reporting prior awards as part of the basis for assessing the reasonableness of future awards, that baseline will be primarily composed of high awards that have drawn challenges.

### i. Past Mental and Emotional Distress

The district court upheld the $200,000 award for emotional damages after making an appraisal of the evidence bearing on damages and comparing the jury's award with awards approved in similar cases. The court concluded that the evidence at trial supported a finding that Stampf suffered "more than mere 'garden-variety' emotional distress" because: (1) Stampf was

20

arrested at work and escorted in handcuffs past coworkers, supervisors, and Trigg; (2) her arrest was the subject of gossip at the LIRR, where she worked for approximately fourteen years; (3) she was patted down, told she was being charged with sexual assault, and held in a locked cell for approximately five hours;[4] (4) she testified that this experience made her feel "ashamed and mortified and . . . like a criminal," JA at 177; (5) she was issued a DAT charging forcible touching; (6) she borrowed money from her father to hire a defense attorney, causing her father to obtain a second mortgage on his home; (7) she faced a disciplinary hearing by her employer and chose not to testify in her defense because of the pending criminal case against her; (8) the arrest and prosecution and obligation to pay back her father took a toll on her committed romantic relationship, eventually contributing to the end of the relationship; (9) the stress and anxiety of the criminal case contributed to Stampf beginning to drink excessively; and (10) Stampf sought therapy, attended Alcoholics Anonymous meetings, and required prescription medication to help her sleep. *Stampf v. Long Island R.R. Auth.*, No. 07-cv-3349(SMG), 2011 WL 3235704, at *10-11 (E.D.N.Y. July 28, 2011). The district court observed that "[i]t was clear from Stampf's demeanor at trial that she continues to be troubled by the events surrounding her arrest and prosecution." *Id.* at *11.

The court compared Stampf's award with other awards in excess of $100,000 for "straight-forward 'garden-variety' emotional distress damages" and found that Stampf's $200,000 award was "within the vast range of awards in comparable cases." *Id.* at *12-13 (citing *Patterson v. Balsamico*, 440 F.3d 104, 120 (2d Cir. 2006) (affirming a jury award of $100,000 in

---

[4] Police records show that Stampf was, in fact, held in a locked cell for approximately four hours.

compensatory damages on a claim of intentional infliction of emotional distress arising from an assault in which plaintiff was sprayed with mace and shaving cream and taunted with racial slurs); *Wallace v. Suffolk Cnty. Police Dep't*, No. 04-cv-2599(RRM)(WDW), 2010 WL 3835882, at *8 (E.D.N.Y. Sept. 24, 2010) (upholding a $200,000 award for emotional distress under the federal "shocks the conscience" standard—rather than New York's "deviates materially" standard—for "sleeplessness, anger, difficulty with . . . personal and family relationships, stress, tension, and emotional trauma" resulting from First Amendment retaliation); *Strader v. Ashley*, 877 N.Y.S.2d 747, 751 (3d Dep't 2009) (affirming a $250,000 compensatory damages award for malicious prosecution where the plaintiff lost employment and income and "suffered emotional and physical harm—including feeling anxious and worried about his reputation in the community, feeling sick to his stomach, difficulty sleeping and eating and losing weight—and that he stopped socializing for fear of public scorn"); *Morsette v. "The Final Call,"* 764 N.Y.S.2d 416, 422 (1st Dep't 2003) (affirming a $100,000 award for past mental anguish and emotional harm and reducing an award for future mental anguish and emotional harm from $500,000 to $300,000 in a libel case where defendant published a picture of the plaintiff in a newspaper that was altered to make her look like an inmate, causing depression, anxiety, and weight gain)).

In our view, these cases do not support the approval of the $200,000 award for past emotional distress. The courts in *Patterson* and *Morsette* upheld awards of $100,000—half the size of Stampf's award for past emotional distress damages—and the other two cases the district

22

court relied on are distinguishable. The *Wallace* court upheld a $200,000 award for emotional stress under the more deferential shocks-the-conscience standard, and the $250,000 compensatory damages award in *Strader* included lost employment and income in addition to emotional distress.

As we previously noted in the context of discrimination claims, "New York cases vary widely in the amount of damages awarded for mental anguish." *Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) (quoting *Meacham v. Knolls Atomic Power Lab.*, 381 F.3d 56, 78 (2d Cir. 2004) (compiling discrimination cases in which New York courts reduce awards for mental anguish to $30,000 or below as well as cases in which New York courts uphold awards of more than $100,000)). Based on our survey of damages awards for emotional distress and malicious prosecution, $100,000 appears to reflect the upper end of the range of awards in comparable cases. *Compare Patterson*, 440 F.3d at 120 *and Morsette,* 764 N.Y.S.2d at 422, *with Rohrs v. Rohrs*, 793 N.Y.S.2d 532, 533-34 (2d Dep't 2005) (holding that a $50,000 malicious prosecution compensatory damages award deviated materially from what would be reasonable compensation and ordering a new trial on the issue of damages unless plaintiff stipulated to a reduction in the award to $25,000), *Lynch v. Cnty. of Nassau*, 717 N.Y.S.2d 248, 249 (2d Dep't 2000) (ordering a new trial on the issue of damages unless the plaintiff consented to reducing damages for loss of reputation and humiliation from $25,000 to $10,000, reducing damages for intentional infliction of emotional distress from $75,000 to $25,000, and reducing punitive damages from $100,000 to $50,000 in connection with an action for false arrest, malicious

prosecution, and intentional infliction of emotional distress), *and Parkin v. Cornell Univ., Inc.*, 581 N.Y.S.2d 914, 916-17 (3d Dep't 1992) (finding excessive a $100,000 compensatory damages award and $100,000 punitive damages award to each plaintiff in an action for false arrest, malicious prosecution, and abuse of process, and ordering a new trial on the issue of damages unless plaintiffs stipulated to a reduction of compensatory damages to $10,000 and of punitive damages to $10,000 per plaintiff).

Even though Stampf may have suffered "greater than 'garden variety' emotional distress," as the district court found, we find the award for past emotional distress excessive given that Stampf was held by the police for only a few hours and was never indicted, convicted, or sentenced. However, in deference to the district court's finding that Stampf suffered greater than garden variety emotional distress, we believe that an award for past emotional distress reflecting the upper end of awards for emotional distress in comparable cases would be appropriate.[5] Accordingly, we will grant a new trial on the issue of damages for past emotional distress unless Stampf agrees to a remittitur reducing her award for past emotional distress to $100,000.

---

[5] Although the average victim of malicious prosecution may not have experienced such a high degree of stress and anxiety from Trigg's malicious prosecution, "a defendant must take a plaintiff as [s]he finds him" and, therefore, is responsible for the harm she inflicts on a person even if that harm is exacerbated by the person's unknown infirmities. *Bartolone v. Jeckovich*, 481 N.Y.S.2d 545, 546-47 (4th Dep't 1984) (reversing the trial court's grant of remittitur on a jury award of $500,000 for a plaintiff who sustained minor physical injuries and an "acute psychotic breakdown" resulting from a car accident) (citing *McCahill v. New York Transp. Co.*, 201 N.Y. 221 (1911)); *cf. Steinhauser v. Hertz Corp.*, 421 F.2d 1169, 1172 (2d Cir. 1970) (Friendly, *J.*) (reversing a verdict in defendant's favor on the ground that the plaintiff's theory of the case—that a defendant is liable for the emergence of schizophrenia resulting from the emotional trauma suffered by a passenger in a minor car accident caused by the defendant—is legally valid); *Williams v. Bright*, 658 N.Y.S.2d 910, 912 n.2 (1st Dep't 1997) (recognizing that the "eggshell skull doctrine" is "traditionally [applied] to a plaintiff's preexisting physical condition, mental illness or psychological disability" (internal citations omitted)).

**ii. Future Mental and Emotional Distress**

The district court upheld the jury award of $100,000 for future mental and emotional distress because the malicious prosecution "had long-lasting effects, including the break-up of a committed relationship and problems with alcohol," and Stampf "continues to work for the Railroad and thus no doubt still interacts with co-workers who saw or heard about her arrest." *Stampf*, 2011 WL 3235704, at \*13. In finding the $100,000 reasonable, the district court cited *Boodram v. Brooklyn Developmental Ctr.*, 773 N.Y.S.2d 817 (Civ. Ct. 2003), in which the New York City Civil Court upheld jury awards for $86,000 for mental suffering and emotional and psychological injuries through trial and $86,000 for future mental suffering and emotional and psychological injury. *Id.* at 834-35. In that case, the court determined that the award for future mental and emotional distress was reasonable where the plaintiff was diagnosed with "post-traumatic stress disorder with secondary depression" that was "both permanent and disabling." *Id.* at 822, 835.

The district court upheld the jury's award for future emotional distress on highly speculative grounds. First, unlike the plaintiff in *Boodram*, Stampf has not been diagnosed with a permanent mental or emotional disorder, nor is there any medical evidence in the record showing whether the distress caused by the malicious prosecution would affect Stampf's alcohol abuse problems in the long-term.[6] Second, based on the evidence presented in this case, the jury could only speculate as to what emotional distress Stampf might suffer in the future from her broken

---

[6] Stampf testified that she attended meetings for her alcoholism prior to the July 9, 2006 incident, and she testified at trial that she currently drinks "[v]ery little." JA at 235.

25

relationship. We therefore cannot sustain her award of future emotional damages on that ground.

*See In re Estate of Rothko*, 372 N.E.2d 291, 298 (N.Y. 1977) (noting damages must be "not merely speculative, possible or imaginary").

Nonetheless, a reasonable juror could find that returning to work every day with coworkers who were aware that Stampf was arrested for grabbing another coworker's breast would cause some emotional distress. We find that an award of $20,000 appropriately reflects Stampf's damages from future emotional and mental distress.

### b. Punitive Damages

In reviewing an award for punitive damages in *Payne*, we explained that "[n]o objective standard exists that justifies the award of one amount, as opposed to another, to punish a tortfeasor appropriately for his misconduct." 711 F.3d at 93. Punitive damages "are given to the plaintiff over and above the full compensation for the injuries, for the purpose of punishing the defendant, of teaching the defendant not to do it again, and of deterring others from following the defendant's example." Prosser and Keeton on the Law of Torts § 2, at 9 (5th ed. 1984). They "are by nature speculative, arbitrary approximations." *Payne*, 711 F.3d at 93. Despite this arbitrariness, courts "bear the responsibility to ensure that judgments as to punitive damages conform, insofar as reasonably practicable, to [the prevailing norms of the legal system] and are not excessive." *Payne*, 711 F.3d at 96. We review a district court's determination as to whether a jury's punitive damages award "deviates materially from what would be reasonable," *Lynch*, 717 N.Y.S.2d at 249 (2d Dep't 2000), under an abuse of discretion standard, but given that "courts of

appeals are no less institutionally competent to review punitive awards for excessiveness than are trial courts . . . , the degree of discretion enjoyed by trial courts in these matters is relatively narrow." *Payne*, 711 F.3d at 100.

The Supreme Court outlined three "guideposts" to facilitate its review of state court punitive damage awards: (1) the degree of reprehensibility of the defendant's conduct, (2) the ratio of punitive damages to the actual harm inflicted, and (3) "the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 (1996). When a federal appellate court reviews a federal district court's ruling as to whether a jury's punitive damages award is excessive, it has "considerably more supervisory authority" than when the Supreme Court reviews a decision of the highest court of a state on the same question, yet the Court's guideposts set forth in *Gore* provide a useful framework for reviewing federal district court punitive damages awards. *Payne*, 711 F.3d at 97. Thus, we consider whether Stampf's award for punitive damages is excessive in light of judges' greater familiarity than juries' with norms for punitive damages, federal appellate courts' considerable supervisory authority when reviewing district courts' rulings as to the excessiveness of a jury's punitive damages award, and the three guideposts set forth by the Supreme Court in *Gore*.

### i. Degree of Reprehensibility

The Supreme Court described "the degree of reprehensibility of the defendant's conduct" as "[p]erhaps the most important indicium of the reasonableness of a punitive damages award."

*Gore*, 517 U.S. at 575. In assessing reprehensibility, we consider both the defendant's conduct and its natural consequences. *See id.* at 575-76. Conduct that involves deceit or malice is more reprehensible than conduct involving mere negligence, *Patterson*, 440 F.3d at 121; *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996). Likewise, conduct that could cause serious physical or emotional injury is more reprehensible than conduct that risks only minor injuries or economic damages. *See Gore*, 517 U.S. at 576.

It can be difficult for juries and judges to calibrate the reprehensibility of a defendant's conduct to a reasonable punitive damages award in a vacuum. *Cf. Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). Courts have found it useful to compare punitive damages awards with previous court rulings on the issue of excessiveness to assist with this determination. *See Payne*, 711 F.3d at 104-05; *Lee*, 101 F.3d at 812.

In the instant case, with actual malice, Trigg made false statements to the police accusing Stampf of grabbing her breast, which resulted in Stampf's arrest at work in front of a number of coworkers. Due to Trigg's malicious conduct, Stampf spent an evening in prison, experienced public embarrassment at her place of work, and experienced significant stress that contributed to her alcohol abuse problems and the end of a long-term, committed relationship.

Trigg's conduct is comparably reprehensible to the defendants' in *Strader*, 877 N.Y.S.2d 747 and *Lynch*, 717 N.Y.S.2d 248. In *Strader*, a plaintiff brought an action against defendants who made false statements to the police accusing plaintiff of theft resulting in a jury trial for petit larceny. The plaintiff testified that, as a result of the malicious prosecution, he lost

28

carpentry work and income from his position as a substitute teacher and suffered emotional and physical harm "including feeling anxious and worried about his reputation in the community, feeling sick to his stomach, difficulty sleeping and eating and losing weight." *Strader*, 877 N.Y.S.2d at 751. The Third Department upheld a jury award of $250,000 in compensatory damages and $117,500 in punitive damages. *Id.* at 751-52.

In *Lynch*, a parking enforcement officer falsely accused the plaintiff of hitting her with her car as she drove away after a dispute over a parking ticket. *See* Brief for Defendant-Appellants, *Lynch v. Cnty. of Nassau*, 717 N.Y.S.2d 248 (2d Dep't 2000) (No. 1999-10362), 1999 WL 33922170, at *3. The plaintiff was arrested, held in a cell for two or three hours, charged with assault in the third degree, and required to make six or seven pretrial court appearances before the charges were dropped. *Id.* at *3-4. The plaintiff brought an action for false arrest, malicious prosecution, and intentional infliction of emotional distress and was awarded $150,000 in compensatory damages and $100,000 for punitive damages. *Lynch*, 717 N.Y.S.2d at 249. The court found that "the plaintiff suffered humiliation and a deprivation of liberty as a result of being arrested, . . . [and] the subsequent criminal proceedings. However, there was little objective evidence that she suffered significant damage to her reputation as a result of the defendants' actions." *Id.* at 249. Accordingly, the court reduced the compensatory damages to $85,000 and the punitive damages to $50,000. *Id.*

Based on these comparisons, we find, while giving deference to the district court's conclusion, that the punitive damages imposed on Trigg were excessive in relation to the reprehensibility of her conduct.

### ii. Ratio of Punitive Damages to the Actual Harm Inflicted

The Supreme Court explained in *Gore* that it could not "draw a mathematical bright line" between constitutionally acceptable and unacceptable ratios for punitive damages, *Gore*, 517 U.S. at 582. In *State Farm Mutual Automobile Insurance Co. v. Campbell*, the Court said that, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," but clarified in the same opinion that greater ratios "may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages. 538 U.S. 408, 425 (2003) (internal quotation marks and citation omitted); *see Lee*, 101 F.3d at 811 (noting that a punitive damages award over 500 times greater than a compensatory damages award could be reasonable where the compensatory damages are nominal). In any event, the ratio of the jury's award of punitive damages to the compensatory award (as reduced) is 1:1, which does not "raise a suspicious judicial eyebrow." *Gore*, 517 U.S. at 582 (citation omitted).

### iii. Difference between this remedy and the civil penalties authorized or imposed in comparable cases

In *Gore*, the Supreme Court stated that "[c]omparing the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct provides a third

30

indicium of excessiveness." *Gore*, 517 U.S. at 583. The Court established this as a third indicium

of excessiveness in order to "accord substantial deference to legislative judgments concerning

appropriate sanctions for the conduct at issue." *Id.* (internal quotation marks and citation

omitted).

The offense of "falsely reporting an incident in the third degree" under New York law

provides a useful comparison in this case. The New York Penal Law classifies falsely reporting

an incident in the third degree as a class A misdemeanor. N.Y. Penal Law § 240.50. "A person is

guilty of falsely reporting an incident in the third degree when, knowing the information

reported, conveyed or circulated to be false or baseless, he or she: . . . (3) [g]ratuitously reports

to a law enforcement officer or agency (a) the alleged occurrence of an offense or incident which

did not in fact occur . . . ." *Id.* A person convicted of a class A misdemeanor may be sentenced to

a term of imprisonment "not [to] exceed one year," N.Y. Penal Law § 70.15(1), and he or she

may be fined by an amount "not exceeding one thousand dollars," N.Y. Penal Law § 80.05, but

neither a prison sentence nor a fine is required under New York law. "The fact that New York

classes [Trigg's] conduct as warranting criminal prosecution tends to confirm the

appropriateness of the imposition of a punitive award." *Payne*, 711 F.3d at 103. Meanwhile, "the

fact that the offense is . . . only a misdemeanor[] and that courts are at liberty . . . to impose no

imprisonment or fine whatsoever . . . tend to suggest that New York regards this conduct as

occupying the lower echelons of criminality." *Id.* at 104. The maximum limits set by the New

York legislature on the criminal penalties for Trigg's conduct further confirm the excessiveness of the punitive award of $150,000.

### iv. Totality of the Factors

Considering all the factors specified in *Gore*, we find that the punitive damages award is excessive and conclude that a punitive damages award of $100,000 is the maximum sustainable punitive award.

### CONCLUSION[7]

The judgment of the district court is vacated in part and affirmed in part. We remand with instructions to grant a new trial on the issue of damages unless Stampf agrees to a remittitur reducing her award for past emotional distress to $100,000, her award for future emotional distress to $20,000, and her award for punitive damages to $100,000, which (added to her economic damages of $30,000) would make an aggregate damages award of $250,000.

---

[7] We have considered Trigg's other arguments and find them meritless.