19-969-cv
*Omega SA et al. v. 375 Canal, LLC*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2019
No. 19-969-cv

**OMEGA SA, SWATCH SA,**
*Plaintiffs-Appellees,*

v.

**375 CANAL, LLC,**
*Defendant-Appellant.*\*

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: MARCH 10, 2020
DECIDED: JANUARY 6, 2021

Before:     RAGGI, LOHIER, and MENASHI, *Circuit Judges.*

Defendant 375 Canal, LLC ("Canal"), appeals from a judgment entered June 12, 2019, awarding $1.1 million in statutory damages to Plaintiff Omega SA for Canal's contributory infringement of Omega's trademarks, arising from sales of counterfeit Omega watches at

---

\* The Clerk of Court is directed to amend the caption as set forth above.

Canal's property in Manhattan. Canal challenges the district court's denial of Canal's pre-trial motion for summary judgment, the jury instructions on the elements of contributory infringement, several evidentiary rulings, and the scope of the permanent injunction. We reject Canal's arguments on all issues. We **DISMISS** Canal's appeal of the denial of summary judgment and **AFFIRM** the judgment and injunction.

Judge Lohier concurs in part and dissents in part in a separate opinion.

––––––––––

CHRISTOPHER R. NOYES, Wilmer Cutler Pickering Hale & Dorr LLP, New York, New York (Thomas G. Saunders, Isley M. Gostin, and Robert J. Gunther, Jr., *on the brief*), *for Plaintiffs-Appellees*.

MISHA TSEYTLIN, Troutman Sanders LLP, Chicago, Illinois (W. Alex Smith and Avi Schick *on the brief*), *for Defendant-Appellant*.

––––––––––

MENASHI, *Circuit Judge*:

After hearing evidence that Defendant landlord 375 Canal LLC ("Canal") knew of counterfeiting at its leased Manhattan property for years, a jury awarded $1.1 million in statutory damages to Plaintiff Omega SA, a watch company, for Canal's contributory infringement of Omega's trademarks. On appeal, Canal challenges the judgment entered on March 12, 2019, and amended on June 12, 2019, primarily on the ground that the district court (Crotty, J.) did not require Omega to identify a specific vendor to whom Canal continued to lease

2

property despite knowing or having reason to know of counterfeiting by that same vendor.

At the outset, we reject Canal's attempt to raise this argument in the context of the district court's pre-trial denial of summary judgment. That interlocutory decision is not appealable. Furthermore, once the case proceeds to a full trial on the merits, the trial record supersedes the record existing at the time of the summary-judgment motion, and there is no basis for this court to review issues raised in a denied motion overtaken by trial.

We nevertheless reach the merits of Canal's trademark arguments via its appeal of the jury instructions, and we reject Canal's position as inconsistent with our precedent in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010). In *Tiffany*, we held that a defendant may be liable for contributory trademark infringement if it was willfully blind as to the identity of potential infringers—that is, under circumstances in which the defendant did not know the identity of specific infringers. *Id.* at 109-10. That holding precludes Canal's argument that Omega needed to identify a specific infringer to whom Canal continued to lease property. At trial, Omega pursued a theory of willful blindness, and the district court's jury instructions accurately captured *Tiffany*'s requirements. We therefore reject Canal's challenges to those instructions.

Canal also challenges several of the district court's evidentiary and damages rulings, including the scope of the permanent injunction. We find no reversible error, and accordingly we affirm the judgment and injunction.

# BACKGROUND[1]

## I

Canal owns the property located at 375 Canal Street in Manhattan. The property has a long history of litigation alleging counterfeiting and trademark violations. In 2006, the City of New York sued Canal for nuisance resulting from the sale of counterfeited merchandise at 375 Canal Street. Canal settled, paid an $8,000 penalty, and agreed that 375 Canal Street could not be used in any way for "the sale and/or possession of trademark counterfeit merchandise or pirated merchandise." Stipulation of Settlement at 2, *City of New York v. 375 Canal, LLC*, No. 403028/06 (N.Y. Sup. Ct., Cnty. of N.Y. Sept. 20, 2006). Canal also agreed to unannounced warrantless searches by the police.

Also in 2006, Louis Vuitton Malletier sued Canal for counterfeiting activities at 375 Canal Street. Canal entered into a consent order permanently enjoining Canal from violating Louis Vuitton's trademarks, requiring Canal to post signs for two years stating that the sale and purchase of counterfeit Louis Vuitton items is illegal, and allowing walk-throughs by Louis Vuitton representatives. *See* Order for Permanent Injunction on Consent, *Louis Vuitton Malletier v. Canal Assocs., L.P.*, No. 1:06-cv-306 (S.D.N.Y.), ECF No. 4 (Jan. 17, 2006).

---

[1] On appeal following a trial on the merits, we construe the facts in the light most favorable to the jury's verdict. *Velez v. City of New York*, 730 F.3d 128, 131 n.2 (2d Cir. 2013).

In 2009, the City of New York again sued Canal for nuisance resulting from the sale of counterfeit goods at 375 Canal Street. Canal again settled and agreed to a permanent prohibition against the "selling, facilitating the sale or possessing [of] trademark counterfeit merchandise." Stipulation of Settlement at 3, *City of New York v. 375 Canal, LLC*, No. 401522/09 (N.Y. Sup. Ct., Cnty. of N.Y. Aug. 14, 2009). Canal also agreed to dismantle all "hidden storage facilities" and again consented to unannounced, warrantless inspections. *Id.* at 4-5. Canal paid a $10,000 penalty and agreed that the premises would be immediately closed by the police in the event of another violation.

Counterfeit handbags were not the only items sold at 375 Canal Street. During a police sting in December 2010, an individual identified as "Rahman" in police records sold a counterfeit Omega watch inside 375 Canal Street and was arrested.

In September 2011, counsel for Swatch SA (which owns Omega) sent a letter to Albert Laboz, one of Canal's owners, informing him of the December 2010 arrest at 375 Canal Street and stating, "As the owner of this premise [*sic*] with the ability to oversee and control the tenants residing within, you can be found liable for the conduct of your tenants. This includes contributory and vicarious liability for the sale of counterfeit products." J. App'x 2681. Canal's counsel responded in October 2011 by email stating that the tenant in question had "apparently … sublet the space to an entity that was selling counterfeit goods bearing your clients' trademarks," and Canal claimed that it had "been informed that the tenant had the offending tenant removed." J. App'x 2692. At trial, however, Omega put forward evidence that the ejection may not have occurred until 2012 and that Canal did not act between 2010 and 2012 to stem

5

counterfeiting, such as by posting anti-counterfeiting signs, conducting walk-throughs, or inspecting the property for hidden compartments that could contain counterfeit goods.

In May 2012, an Omega private investigator visited 375 Canal Street and documented his purchase of a counterfeit Omega Seamaster watch, which precipitated this lawsuit.

## II

In September 2012, Omega sued Canal for contributory trademark infringement, alleging that Canal had continued to lease space at 375 Canal Street despite knowing that vendors at the property were selling counterfeit Omega goods.[2]

After discovery, Canal moved for summary judgment, contending that Omega had not identified a *specific* vendor to whom Canal continued to lease property despite knowing or having reason to know that the specific vendor was selling counterfeit goods. In opposition, Omega argued that it did not need to identify a specific vendor because Omega's primary theory was one of willful blindness: Canal could not avoid liability by shielding itself from learning the identities of the vendors who were selling counterfeits.

On December 22, 2016, the district court denied Canal's motion, agreeing with Omega that under this court's decision in *Tiffany*, 600 F.3d 93, Omega was not required to identify a specific vendor to whom Canal continued to lease its property despite knowledge of counterfeiting by that vendor. *Omega SA v. 375 Canal, LLC*, No. 12-

---

[2] Canal also sued numerous "John Doe" defendants for direct infringement, but those claims are not at issue here.

CV-6979, 2016 WL 7439359, at *3 (S.D.N.Y. Dec. 22, 2016), *reconsideration granted in part on other grounds*, 324 F.R.D. 47 (S.D.N.Y. 2018); *see also Omega SA v. 375 Canal, LLC*, No. 12-CV-6979, 2013 WL 2156043, at *4 (S.D.N.Y. May 20, 2013) (addressing the same issue when denying an earlier motion to dismiss).

The case proceeded to trial by jury, which heard the evidence summarized above. Canal objected to the introduction of certain evidence at issue on appeal. Over Canal's hearsay objection, the district court admitted an email from a New York City police officer providing details on the December 2010 arrest of "Rahman" for selling a counterfeit Omega watch at 375 Canal Street. On the issue of calculating damages to deter further infringement, the district court also allowed (over Canal's objection) the jury to hear limited evidence that Canal's proprietors owned other buildings. The district court excluded (again over Canal's objection) evidence of Omega's actual losses, concluding that the jury would be confused by a discussion of actual damages because Omega had chosen to pursue only statutory damages. The jury nonetheless did hear testimony on the prices for both a real Omega watch and the counterfeit one sold in 2012.

At the close of Omega's evidence and also at the end of the trial, Canal moved under Rule 50 for judgment as a matter of law, and the court reserved its ruling (later denying the motions after the jury returned its verdict). The district court's jury instructions on contributory infringement stated that Omega would need to show that Canal "continue[d] to supply its services" even though it "either knew or had reason to know that a tenant, subtenant or other occupant of its premises was selling, offering for sale, or distributing products bearing counterfeits of Omega's trademarks." J. App'x 2630.

7

The district court then explained that the scienter requirement could be satisfied by willful blindness: "Reason to know," the court said, "includes a concept known as willful blindness. Willful blindness means that … Canal or its agents had reason to suspect that trademark infringing merchandise was being offered or sold but deliberately failed to investigate or looked the other way to avoid seeing such activity." J. App'x 2630. To determine whether willful blindness existed, the district court told the jury:

> You may consider the nature and extent of the communication between 375 Canal and its tenants, subtenants or other occupants of the premises regarding the infringing acts. You may also consider the extent and nature of the alleged infringement of Omega's trademarks. If the infringement is serious and widespread, it is more likely that 375 Canal knew about and condoned the acts of its tenants, subtenants or other occupants of its premises.

J. App'x 2631.

The jury found that Canal had contributorily infringed four of Omega's trademarks on the 2012 counterfeit watch and had done so willfully. The jury awarded $275,000 in statutory damages for each of the four marks, totaling $1.1 million.[3]

The district court entered judgment on March 12, 2019, and Canal filed a notice of appeal on April 11, 2019. On June 12, 2019, the district court amended the final judgment to include a permanent

---

[3] The Lanham Act authorizes statutory damages of up to $2 million "per counterfeit mark per type of goods or services" if the infringement is willful. 15 U.S.C. § 1117(c)(2).

injunction prohibiting "375 Canal, LLC, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with 375 Canal, LLC or its officers, agents, servants, employees, or attorneys who receive actual notice of this Order by personal service, facsimile service, or otherwise" from infringing, facilitating the infringement of, and taking other actions with respect to Omega's marks even outside of 375 Canal Street. J. App'x 3079-80. On June 25, 2019, Canal filed an amended notice of appeal that included the injunction.

## DISCUSSION

On appeal, Canal's primary challenge is that the district court did not require Omega to demonstrate that Canal continued to lease space to a specific, identified vendor who Canal knew or should have known was infringing Omega's trademarks. Canal raises this argument in two ways: via appeal of the pre-trial order denying Canal's motion for summary judgment and via appeal of the jury instructions. We dismiss the former and reject the latter on the merits.

Canal also challenges several of the district court's evidentiary and damages decisions, but we find no reversible error and therefore affirm the judgment and the permanent injunction.

## I

Canal argues that the district court erred by denying Canal's pre-trial motion for summary judgment, which contended that there was no evidence that Canal continued to lease property to a specific vendor whom Canal knew or should have known was engaging in

9

the sale of counterfeit Omega goods. We dismiss this part of Canal's appeal.

## A

A party generally cannot "appeal an order denying summary judgment after a full trial on the merits." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). That order "retains its interlocutory character," *id.*, and therefore we lack jurisdiction to review it on appeal, *see* 28 U.S.C. § 1291 ("The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts.").[4]

---

[4] In this appeal, Canal argues that it "is entitled to summary judgment," Appellant's Reply Br. 3, and thus squarely presents the question of our jurisdiction to grant that relief, *see Funk v. Belneftekhim*, 861 F.3d 354, 371 (2d Cir. 2017) (noting that courts "may not decide cases over which they lack subject matter jurisdiction"). We therefore address "the issue that is before [us]." *United States v. Rubin*, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring). The partial dissent suggests that because another ground of decision is available, this discussion is dicta. *Post* at 8. "But where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949); *see also Union Pac. R.R. v. Mason City & Fort Dodge R.R.*, 199 U.S. 160, 166 (1905). This complaint about purported dicta would apply equally to the Supreme Court's decision in *Ortiz*. The Supreme Court explained that "instant appeal is not available" for the denial of summary judgment in that case and, "[m]oreover, *even had instant appellate review been open to them*, the time to seek that review expired well in advance of trial" because a "notice of appeal must generally be filed 'within 30 days after the judgment or order appealed from.'" *Ortiz*, 562 U.S. at 188-89 (emphasis added) (quoting Fed. R. App. P. 4(a)(1)(A)).

Even if the district court's denial of Canal's summary judgment motion qualified for an exception allowing review,[5] "the time to seek that review expired well in advance of trial." *Ortiz*, 562 U.S. at 189. A notice of appeal generally must be "filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A); Fed. R. App. P. 5(a)(2); *see also* 28 U.S.C. § 2107(a). In this case, however, nearly 2.5 years passed between the denial of summary judgment and Canal's filing of any notice of appeal (December 22, 2016, and April 11, 2019, respectively). This appeal deadline is jurisdictional, and it independently requires us to dismiss Canal's challenge to the denial of summary judgment. *Bowles v. Russell*, 551 U.S. 205, 213 (2007); *see also Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 534 n.1 (8th Cir. 2015).

Moreover, a motion for summary judgment does not preserve an issue for appellate review of a final judgment entered after trial because "[o]nce the case proceeds to trial, the full record developed in court supersedes the record existing at the time of the summary-judgment motion." *Ortiz*, 562 U.S. at 184. We have recognized an exception to this principle where the purported error was "purely one of law." *Keeling v. Hars*, 809 F.3d 43, 47 (2d Cir. 2015). But, even then, we will not entertain post-verdict appeals on an issue raised in a denied summary-judgment motion when two alternative paths to review were available to the challenging party: "(1) the party may

_____

[5] Congress has exempted certain interlocutory decisions from the final decision rule, *see* 28 U.S.C. § 1292, and the Supreme Court has construed certain denials of summary judgment as final decisions, *see, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985) (holding that certain denials of summary judgment on the basis of qualified immunity are final decisions), but those exceptions do not apply here.

petition for the right to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b); or (2) if the case proceeds to trial, the party may file a motion (and renewed motions) pursuant to Rule 50 for judgment as a matter of law and appeal the district court's denial of that motion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 132 (2d Cir. 1999) (stating these conditions in acknowledging the possibility of post-verdict appeals in "extraordinary circumstances"); *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 229 n.2 (2d Cir. 2000) (noting that a defendant "cannot challenge the District Court's summary judgment decision" because the court's "judgment on the verdict after a full trial on the merits supersedes the earlier summary judgment proceedings") (alteration omitted).[6]

Canal provides no explanation for why it could not have pursued one of these paths. At trial, Canal made two Rule 50 motions for judgment as a matter of law—but Canal has chosen not to appeal the denial of those motions. Where a party could have moved pursuant to Rule 50 (or Rule 52 in a bench trial), this court will not hear an appeal of a prior denied motion for summary judgment after a full trial on the merits. As we stated in *Pahuta*, "We will not hear in the guise of an appeal of [Canal's] defeat on its motion for summary judgment an appeal of its defaulted motion under Rule 50(a)." *Pahuta*, 170 F.3d at 131; *see Vill. of Freeport v. Barrella*, 814 F.3d 594, 601 n.10 (2d Cir. 2016) ("[T]o the extent that defendants' summary judgment arguments do raise pure questions of law, we fully consider them in the context of defendants' motions for judgment as a matter of law.").

---

[6] A party may have yet another option: challenge the jury instructions that raise the same legal question. That is precisely what Canal did here, and we address the merits of its trademark arguments in that context below.

For these reasons, we do not consider Canal's appeal relating to the district court's denial of its motion for summary judgment.

**B**

The partial dissent faults us for applying the jurisdictional requirement to file a timely notice of appeal to a party's attempt to appeal an order denying summary judgment after trial. *See post* at 8. But the unanimous holding of the Supreme Court in *Ortiz* was that such an order generally is not appealable *at all* because it is interlocutory—and even if it were appealable, the appellant would need to meet the jurisdictional deadline for filing a notice of appeal.[7] And *Ortiz* did not limit its holding on this issue to cases involving qualified immunity.[8] A party seeking review of issues decided in such an order should do what our court has repeatedly said parties in such a position should do, and which we have just reiterated: petition for the right to file an interlocutory appeal pursuant to 28 U.S.C.

---

[7] *Ortiz*, 562 U.S. at 188-89; *see also id.* at 192 (Thomas, J., concurring in the judgment) ("As the Court concludes, a party ordinarily cannot appeal an order denying summary judgment after a full trial on the merits. Most such orders are not appealable at all, because they neither qualify as 'final decisions' capable of appeal under 28 U.S.C. § 1291 nor come within the narrow class of appealable interlocutory orders under § 1292(a)(1). And for those that are appealable, the time for filing an appeal will usually have run by the conclusion of the trial.") (internal citation and footnote omitted).

[8] The Court in *Ortiz* noted—but did not resolve—the separate question of whether a "purely legal issue" could be "preserved for appeal by an unsuccessful motion for summary judgment" and therefore could be raised via appeal of the final judgment even in the absence of a Rule 50 motion. *Ortiz*, 562 U.S. at 190. To the extent Canal attempts to rely on this separate theory, *Pahuta* controls and confirms that we will not review Canal's challenge.

§ 1292(b) or, if the case proceeds to trial, either move pursuant to Rule 50 (or Rule 52) for judgment as a matter of law and appeal the district court's denial of that motion or challenge the jury instructions. For cases that proceed to trial, these mechanisms fully preserve a party's arguments for appellate review. And if, due to "extraordinary circumstances," *Pahuta*, 170 F.3d at 132, a party cannot avail itself of any of those options, it may appeal the final judgment entered after trial and raise an issue last raised in its motion for summary judgment so long as that issue presents a "pure[ question] of law," *Keeling*, 809 F.3d at 47.

Despite its acknowledgement that a denial of summary judgment is "not a final judgment," *post* at 11, and therefore generally cannot be appealed, *see* 28 U.S.C. § 1291, the partial dissent advocates a rule that all denials of summary judgment—save only those "tightly focused" on the sufficiency of the evidence—are in fact always appealable following a trial on the merits, *post* at 2. Such an approach is inconsistent with the final judgment rule and with the principle that "[i]n the absence of a Rule 50(b) renewed motion or extraordinary circumstances, an 'appellate court is without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.'" *Pahuta*, 170 F.3d at 129 (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 218 (1947)) (alteration omitted).[9] It is also unclear to

---

[9] The partial dissent notes that at least one subsequent case appears to conflict with *Pahuta*'s rule that, when considering an appeal of a final judgment entered after a trial, we will not decide issues last raised in a denied motion for summary judgment unless the case presents "extraordinary circumstances." *Pahuta*, 170 F.3d at 129; *see post* at 6. To the extent that such a conflict exists, *Pahuta* would remain binding as the earlier

14

us why such an approach would be desirable when Rule 50 is available and in the absence of extraordinary circumstances. Such circumstances are not present here.

## II

We nevertheless review the substance of Canal's trademark arguments via its challenge to the district court's jury instructions on contributory infringement. As noted above, Canal insists that the district court erred by not instructing the jury that Omega had to prove that Canal continued to lease space to a specific, identified vendor that it knew or should have known was selling counterfeit Omega goods.[10] We reject Canal's argument, which conflicts with this court's opinion in *Tiffany*, 600 F.3d 93.

In *Tiffany*, we affirmed a bench trial verdict that eBay had not engaged in contributory trademark infringement.[11] Private sellers had used eBay's website to sell counterfeit Tiffany products, and eBay promptly removed listings that it identified as selling counterfeits; eBay also formed a team to identify and remove such listings proactively. *Tiffany*, 600 F.3d at 97-100. Nevertheless, eBay was unable to eliminate the sale of counterfeit Tiffany goods on the website. We

---

precedent. *Tanasi v. New All. Bank*, 786 F.3d 195, 200 n.6 (2d Cir. 2015); *United States v. Sanchez*, 623 F. App'x 35, 39 (2d Cir. 2015) (summary order).

[10] We review challenges to jury instructions *de novo* but will reverse only if an error was harmful. *Rasanen v. Doe*, 723 F.3d 325, 331 (2d Cir. 2013).

[11] The Lanham Act does not expressly create liability for contributory trademark infringement, but the Supreme Court has concluded that "liability for trademark infringement can extend beyond those who actually mislabel goods with the mark of another." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982).

affirmed the district court's verdict that there was no contributory infringement, noting that "Tiffany failed to demonstrate that eBay was supplying its service to individuals who it knew or had reason to know were selling counterfeit Tiffany goods." *Id.* at 109.

Canal relies on the portion of *Tiffany* that describes contributory trademark infringement as occurring when the defendant "continues to supply its product to *one* whom it knows or has reason to know is engaging in trademark infringement," *id.* at 108 (emphasis in original) (quoting *Inwood*, 456 U.S. at 854), meaning that the defendant must be aware of "particular sellers" whom it "knew or had reason to know were selling counterfeit [plaintiff] goods," *id.* at 109.[12]

Canal argues that the district court's jury instructions failed to follow these requirements by allowing for liability without a showing that Canal continued providing services to a specific vendor suspected of infringement. But Canal is wrong that actual knowledge of a specific infringer is required in all cases. In the course of holding that the plaintiff must identify particular sellers suspected of counterfeiting, *Tiffany* explained that evidence of willful blindness would also suffice: "A service provider is not, we think, permitted willful blindness. When it has reason to suspect that users of its service are infringing a protected mark, it may not shield itself from learning of the particular infringing transactions by looking the other way." *Id.* A defendant may be willfully blind either to particular transactions or to the identities of infringers: "[I]f eBay had reason to suspect that counterfeit Tiffany goods were being sold through its website, and intentionally shielded itself from discovering the

---

[12] Canal does not dispute that *Tiffany* applies in the context of a landlord and tenants.

16

offending listings *or the identity of the sellers behind them*," we said, "eBay might very well have been charged with knowledge of those sales sufficient to satisfy *Inwood*'s 'knows or has reason to know' prong." *Id.* (emphasis added).

*Tiffany*'s discussion of willful blindness confirms that a defendant may be held liable for contributory trademark infringement despite not knowing the identity of a specific vendor who was selling counterfeit goods, as long as the lack of knowledge was due to willful blindness. *Tiffany* therefore precludes Canal's argument that Omega was required to identify a specific individual or entity to whom Canal continued to lease its property despite knowing or having reason to know of infringement by that same individual or entity.

At trial, Omega pursued a willful blindness theory. Omega introduced evidence from which a jury could find that Canal had a history of turning a blind eye toward counterfeiting at 375 Canal Street and that Canal had taken insufficient steps to root out the counterfeiting it knew or should have known was occurring, including insufficient action after Canal learned of the counterfeit Omega watch sold at 375 Canal Street in 2010. Omega sought and received jury instructions on willful blindness, and the district court's instructions told the jury that liability exists if "Canal either knew or had reason to know that a tenant, subtenant or other occupant of its premises was selling, offering for sale, or distributing products bearing counterfeits of Omega's trademarks," and yet Canal still leased space to infringers. J. App'x 2630. The district court explained that "reason to know" includes the concept of "willful blindness," which means that "Canal or its agents had reason to suspect that

trademark infringing merchandise was being offered or sold but deliberately failed to investigate or looked the other way to avoid seeing such activity." *Id.* These instructions adequately captured the willful-blindness holding of *Tiffany*. *See* 600 F.3d at 110 n.15 ("[C]ontributory liability may arise where a defendant is … made aware that there was infringement on its site but … ignored that fact.").

Canal insists that the verdict below portends widespread liability even for innocent actors. But *Tiffany* made clear that contributory trademark infringement based on willful blindness does not create liability simply because of a defendant's "general knowledge as to counterfeiting on its" property, *id.* at 107, or because a defendant "fail[ed] to anticipate that others would use its service to infringe a protected mark," *id.* at 110 n.15. *Tiffany* provided a test for identifying which scenarios could result in liability: "[C]ontributory liability may arise where a defendant is … made aware that there was infringement on its site but … ignored that fact." *Id.* There is no inherent duty to look for infringement by others on one's property. Indeed, the district court's jury instructions correctly stated that Canal had no affirmative duty to police trademarks:

> Even if 375 Canal has control over the premises, 375 Canal has no affirmative duty to take precautions against the sale of counterfeit goods or to seek out and prevent alleged trademark violations, and cannot be found liable if it simply fails to take reasonable preemptive precautions against sales of counterfeit items.

J. App'x 2629. But where a defendant knows or should know of infringement, whether that defendant may be liable for contributory infringement turns on what the defendant does next. If it undertakes

18

bona fide efforts to root out infringement, such as eBay did in *Tiffany*, that will support a verdict finding no liability, even if the defendant was not fully successful in stopping infringement. But if the defendant decides to take no or little action, it will support a verdict finding liability. *See Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013) (upholding liability because the defendant knew or had reason to know of infringement yet continued to lease vending space "without undertaking a reasonable investigation or taking other appropriate remedial measures"). The jury, properly instructed, reasonably found that the latter scenario occurred here.

Accordingly, we reject Canal's challenges to the jury instructions on contributory liability.[13]

## III

Canal next raises several challenges to evidentiary decisions made by the district court during trial. "We review a trial court's evidentiary rulings deferentially, and we will reverse only for an abuse of discretion." *United States v. Quinones*, 511 F.3d 289, 307 (2d Cir. 2007). To find an abuse of discretion, "we must conclude that the challenged evidentiary rulings were 'arbitrary and irrational.'" *Id.* at

---

[13] We also note that even if Canal were correct that Omega had to identify a specific infringer to whom Canal kept leasing space despite knowing or having reason to know of counterfeiting, the jury could have found that the subtenant who sold the 2010 counterfeit Omega watch was the same one who sold the 2012 Omega watch. Canal claims its tenant ejected this subtenant in 2011, but Omega introduced evidence suggesting that the offending subtenant may not have been ejected until after this lawsuit was filed—when the tenant was ejected in 2012.

19

308 (quoting *United States v. Dhinsa*, 243 F.3d 635, 649 (2d Cir. 2001)). We reject Canal's arguments.

**A**

Canal first contends that the district court erred by admitting—over Canal's hearsay objection—a December 2010 email from a New York City police officer to Omega's attorney that includes 13 line items apparently copied from an arrest database. One item identifies the arrest of "Rahman" for selling a counterfeit Omega watch at "375 Canal." The line entries each include a 9-digit alphanumeric arrest identifier generated by the electronic OmniForm system used for maintaining a log of all arrests. Canal argues that this email is inadmissible hearsay and its admission was harmful because it was the only evidence of a counterfeit Omega sale before 2012—that is, the only evidence of the predicate act that put Canal on notice of infringement of Omega trademarks at 375 Canal Street.

We decline to resolve the parties' dispute about whether this email satisfied the hearsay exceptions for business or public records. *See* Fed. R. Evid. 803(6), (8). Even assuming it was error for the district court to admit the email, Canal has not demonstrated that the error was harmful. *See Tesser v. Bd. of Educ.*, 370 F.3d 314, 319 (2d Cir. 2004) ("[A]n evidentiary error in a civil case is harmless unless the appellant demonstrates that it is likely that in some material respect the factfinder's judgment was swayed by the error.") (internal quotation marks and alteration omitted).

First, there was substantial evidence of rampant trademark infringement of other marks at 375 Canal Street over a lengthy period of time, suggesting extensive counterfeiting activity, and Canal

20

admitted at trial that it was aware of the allegation of the 2010 sale of a counterfeit Omega watch and took it seriously. The "jury reasonably could have inferred that even mere allegations of counterfeit sales of non-[Omega] products should have alerted [Canal] to watch out for infringement of [Omega's] brands," even if there had been no proof of a prior Omega counterfeit being sold. *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1320 (11th Cir. 2019).

Second, and in any event, the December 2010 arrest was discussed in several other documents that were admitted without objection. A September 2011 letter from Swatch to Canal mentioned the same December 2010 arrest at 375 Canal Street for selling a counterfeit Omega watch.[14] An October 2011 email from Canal's own attorney stated that "apparently … an entity … was selling counterfeit goods bearing your clients' trademarks," and Canal claimed that its tenant had the "offending tenant removed." J. App'x 2692. Furthermore, Canal principal Laboz testified that he had been informed of the alleged December 2010 arrest and took it seriously; in fact, a central part of the case pertained to how Canal responded (or failed to respond) after hearing of the December 2010 arrest. Thus, the jury was fully aware of the arrest even setting aside the disputed email sent by the police officer. Finally, to the extent Canal's theory of harm is that the officer's email may have contained transcription errors due to being extracted from the arrest database, Canal has not identified a single such error in the arrest listings, and Canal also had

---

[14] Canal suggested at oral argument that the September 2011 letter was not introduced for its truth. If that were the case, Canal should have objected to the admission of the letter or asked for a limiting instruction, but Canal did neither.

a full opportunity to cross-examine the officer who pulled the information from the arrest log and put it into the challenged email. *See Bridgeway Corp. v. Citibank*, 201 F.3d 134, 143 (2d Cir. 2000) (noting that a party challenging the admission of a putative public record must demonstrate "a lack of trustworthiness" in the document).

Accordingly, even if the admission of the December 2010 arrest email were erroneous, it was harmless.

**B**

Canal also challenges the district court's admission of evidence at trial that showed widespread trademark violations of non-Omega marks at 375 Canal Street. Canal argues the evidence was irrelevant under Federal Rule of Evidence 401 and, even if it was relevant, its relevance was substantially outweighed by unfair prejudice under Rule 403. The district court did not err in admitting the evidence.

The Eleventh Circuit recently and persuasively rejected the same argument Canal now makes:

> [T]he defendants object to the admission of evidence of alleged infringement of non-[plaintiff] brands, arguing that this evidence was also irrelevant and unduly prejudicial because [the plaintiff] failed to show that the non-[plaintiff] goods were actually counterfeit. Yet the jury reasonably could have inferred that even mere allegations of counterfeit sales of non-[plaintiff] products should have alerted the defendants to watch out for infringement of [plaintiff's] brands, so this evidence was relevant to the jury's determination of liability.

*Luxottica*, 932 F.3d at 1319-20. We agree with this logic. If a storefront is willfully blind to widespread trademark infringement under its

roof, it is more probable—and therefore the evidence is "relevant" per Rule 401—that the storefront "intentionally shielded itself from discovering the offending listings or the identity of the sellers behind them." *Tiffany*, 600 F.3d at 109; *see* Fed. R. Evid. 401(a) ("Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence.").

The strong relevance also defeats Canal's Rule 403 argument, especially given that the district court excluded the most prejudicial evidence of non-Omega infringement—such as the complaints in the New York City lawsuits, which catalogued Canal's history of ignoring trademark infringement that had been brought to its attention. Nor was there any risk of confusion from the evidence of non-Omega marks. The district court gave a clarifying instruction that "Canal has no affirmative duty to take precautions against the sale of counterfeit goods or to seek out and prevent alleged trademark violations, and cannot be found liable if it simply fails to take reasonable preemptive precautions against sales of counterfeit items."

Canal cannot demonstrate that the district court abused its discretion in admitting the evidence of non-Omega counterfeits sold at 375 Canal Street.

## C

Canal next contends that the district court erred by excluding "all evidence relating to Omega's lost revenues resulting from the May 19, 2012 sale." Appellant's Br. 43. This argument is unpersuasive.

Canal never identifies precisely what "evidence" it believes was wrongfully excluded. Pursuant to Federal Rule of Evidence 103,

Canal should have made a proffer about what evidence it wanted introduced that was not already in the case. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 151-52 (2d Cir. 2010) ("While an offer of proof is not 'an absolute prerequisite in every appeal from the exclusion of evidence,' it is required where, as here, 'the significance of the excluded evidence is not obvious or where it is not clear what the [excluded evidence] would have been.'") (quoting *Fortunato v. Ford Motor Co.*, 464 F.2d 962, 967 (2d Cir. 1972)). The jury heard testimony that the purchase price of the 2012 counterfeit Omega was $80 and that the price of the closest real Omega watch would be about $5,000, which provides perhaps the best evidence of actual loss. The district court also told the jury that it could consider "the revenues lost by Omega," so the jury had discretion to consider that Omega had provided only trifling evidence of actual loss—and yet the jury still awarded $1.1 million in statutory damages.

Canal also fails to explain how it suffered prejudice. It argues that it was not permitted to offer evidence showing that "Omega would have been unable to prove actual damages." Appellant's Reply Br. 23-24. But Omega elected to receive only statutory damages, which is an option the Lanham Act provides "to address the problem facing a plaintiff unable to prove actual damages." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 110 (2d Cir. 2012). Given that statutory damages were necessarily in lieu of actual damages in this case, Canal cannot show that it was prejudiced by not being allowed to offer evidence refuting an actual-damages claim that Omega did not pursue.

Moreover, the provision allowing for statutory damages for trademark violations says that there may be "an award of statutory

damages … as the court considers just." 15 U.S.C. § 1117(c).[15] In analyzing analogous language in the copyright-infringement statute, we have said that although lost revenue can be one of many relevant factors, courts are not required to "consider whether the statutory damages award is reasonably related to the proven amount of plaintiff's actual loss." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 126 (2d Cir. 2014) (analyzing 17 U.S.C. § 504(c)). We see no reason why this conclusion should not apply equally in the trademark-infringement context, given the mirroring statutory provisions and similar subject matter. The district court therefore had substantial discretion to let the jury hear about or consider actual damages. *See id.*

The district court accordingly did not abuse its discretion in excluding Canal's unspecified evidence refuting actual damages that Omega did not pursue.[16]

---

[15] As previously noted, the award is capped at $2 million "per counterfeit mark per type of goods or services sold" where the "use of the counterfeit mark was willful." 15 U.S.C. § 1117(c)(2).

[16] Canal relatedly contends that the district court was required to tell the jury that "[s]tatutory damages typically bear some relation to actual damages, where actual damages can be shown," Appellant's Br. 48, but this contention is likewise foreclosed by *Psihoyos*, which rejected (albeit in the context of analogous statutory text in the copyright-infringement statute) the argument that a court must consider whether there is a "reasonabl[e] relat[ionship]" between statutory and actual damages. 748 F.3d at 126.

**D**

Canal argues the district court also abused its discretion by allowing the jury to hear evidence of the personal wealth of Canal's owners. We reject Canal's argument.

To be clear, the evidence admitted at trial was not directly on the issue of the owners' wealth but rather on their ownership of several other buildings, purportedly to show that the owners needed to be deterred across several properties. In accordance with the district court's ruling limiting evidence in this area, Omega did not offer evidence about the value of the buildings or the owners' net worth.

This court's opinion in *Psihoyos* (in addressing analogous statutory language for damages for copyright violations) stated that one factor that may be considered for statutory damages is "the deterrent effect on the infringer and third parties." *Psihoyos*, 748 F.3d at 127. The owners and operators of Canal are the most relevant individuals whose actions need to be deterred, and the jury could have believed the owners were insufficiently attentive to trademark infringement at 375 Canal Street because they owned so many properties, in which case there would be a direct tie between owning other properties and the propriety of higher statutory damages.[17]

---

[17] The fact of "ownership of various businesses and trusts" (as opposed to personal wealth) can also be relevant to whether the defendant is "sophisticated" for purposes of "determining willfulness," which was another damages issue the jury here was required to resolve. *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 835 (9th Cir. 2019) (interpreting 17 U.S.C. § 504(c), the copyright analogue to the trademark statutory damages provision at 15 U.S.C. § 1117(c)).

26

Allowing such evidence was not an abuse of discretion.

**IV**

Canal's final argument on appeal is that the district court should have limited the permanent injunction only to actions taken at 375 Canal Street. The scope of a permanent injunction is reviewed for abuse of discretion. *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 299 (2d Cir. 1999).

The district court's injunction prohibits infringing, facilitating the infringement of, and taking other actions with respect to Omega's marks, without any geographic limitation, by "375 Canal, LLC, and its officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with 375 Canal, LLC or its officers, agents, servants, employees, or attorneys who receive actual notice of this Order by personal service, facsimile service, or otherwise."

Canal's argument that the injunction is overbroad is foreclosed by *Guthrie Healthcare System v. ContextMedia, Inc.*, which noted that injunctions should be "narrowly tailored" but that "it does not follow that the injunction may extend only into areas for which the senior user has shown probability of confusion" for trademarks. 826 F.3d 27, 46 (2d Cir. 2016). "It is not as if the senior user must prove a new claim of infringement for each geographic area in which it seeks injunctive relief. Once the senior user has proven entitlement to an injunction, the scope of the injunction should be governed by a variety of equitable factors—the principal concern ordinarily being providing the injured senior user with reasonable protection from the junior user's infringement." *Id.*

Pursuant to *Guthrie*, the district court could extend the injunction beyond 375 Canal Street to other locations where the equities called for it. Canal does not argue that 375 Canal Street is the only location Canal's owners and agents control where there is a risk of Omega trademark infringement. Nor does Canal contend that there is no market for Omega watches in the other locations covered by the injunction. *See id.* at 48 (noting that where the plaintiff's "activities and commercial relationships extend[] beyond" the specific location where infringement occurred, the plaintiff remains "vulnerable to plausibly foreseeable confusions and harms resulting from [the defendant's] use of the marks outside th[at]" core location).

Ultimately Canal provides no basis for concluding that the district court abused its broad discretion to shape the form of injunctive relief after a jury verdict finding trademark infringement.

## CONCLUSION

We **DISMISS** Canal's appeal of the district court's order denying Canal's pre-trial motion for summary judgment, and we **AFFIRM** the judgment and permanent injunction.

LOHIER, *Circuit Judge*, concurring in part and dissenting in part:

I agree with much of the majority opinion. Regrettably, however, I cannot agree with Part I, which improperly dismisses 375 Canal, LLC's appeal of the District Court's denial of summary judgment on the ground that we lack jurisdiction to review the denial, even though it raises a purely legal issue. Nor do I agree with Part I's alternative and altogether unnecessary "holding" that Canal was required to file a notice of appeal within thirty days of the District Court's order denying summary judgment. That issue was raised not by the parties but by the majority, without the benefit of argument. Instead of dismissing the appeal, I would affirm the judgment.

I

Citing Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125 (2d Cir. 1999), the majority opinion suggests that the denial of summary judgment after a trial on the merits cannot be considered on appeal because Canal could have immediately sought an interlocutory appeal from the denial or filed a post-verdict motion for judgment as a matter of law. See Majority Op. at 11–12. In doing so, the majority contravenes binding precedent and creates an intra-

circuit split, as it confuses fact-based appeals from a denial of summary judgment with appeals that mount legal challenges.

In Pahuta, we considered whether we could hear a post-trial, fact-based appeal from the denial of a motion for summary judgment. Pahuta, 170 F.3d at 130–32. We concluded that "such an appeal will not ordinarily lie" for a number of reasons. Id. at 130. A main reason, we explained, is that allowing the appeal would permit appellants to avoid having to move for judgment as a matter of law after a jury verdict under Rule 50 of the Federal Rules of Civil Procedure. Id. at 131. This would result in "a simultaneous determination on appeal of the same issue, sufficiency of the evidence, twice—once based on the trial record and once on the record on the motion for summary judgment." Id. We were thus tightly focused on redundant challenges to the sufficiency of the factual evidence, not purely legal challenges.[1]

---

[1] The decision in Pahuta arose "where the motion [for summary judgment] had been denied because of genuine issues of material fact," not a pure legal issue, "and where denial of a Rule 50 motion confirmed that trial had been necessary." Joan Steinman, The Puzzling Appeal of Summary Judgment Denials: When Are Such Denials Reviewable?, 2014 Mich. St. L. Rev. 895, 917 (2014). Indeed, Pahuta cited "approvingly[] a case in which the Second Circuit had held that summary judgment denials can be appealed once final judgment has been entered if there was no

For that and other reasons, since Pahuta we have consistently held that an appeal of the denial of summary judgment based on factual challenges is not reviewable after a full trial on the merits.[2] See, e.g., Wright v. Musanti, 887 F.3d 577, 586 (2d Cir. 2018) (because denial of summary judgment was based on disputed factual issues and not on a pure question of law, denial of summary judgment after a trial was not appealable); Village of Freeport v. Barrella, 814 F.3d 594, 601 n.10 (2d Cir. 2016) (denial of summary judgment not appealable following trial because "defendants raise both legal and fact-based challenges to the denial of summary judgment"); Stampf v. Long Island R.R. Co., 761 F.3d 192, 201 n.2 (2d Cir. 2014); Jacques v. DiMarzio, Inc., 386 F.3d 192, 199–200 (2d Cir. 2004).

That approach is consistent with the Supreme Court's decision in Ortiz v. Jordan, 562 U.S. 180 (2011), which held that "an appellate court is powerless

---

intervening trial on the merits, and left open the possibility of making exceptions to the norm." Id. at 918 (citing United States v. 228 Acres of Land & Dwelling Located on Whites Hill Rd. in Chester, Vt., 916 F.2d 808, 810–11 (2d Cir. 1990)). What was at stake in Pahuta, in other words, was the sufficiency of evidence, not a pure question of law. See Pahuta, 170 F.3d at 132 (distinguishing 228 Acres of Land).

[2] Contrary to what the majority asserts, I do not suggest that "one subsequent case appears to conflict with Pahuta." Majority Op. at 14 n.9. Given the narrow scope of the holding in Pahuta, I am unaware of such a case.

3

to review the sufficiency of the evidence after trial" where the party making the sufficiency challenge has failed to move for a judgment under Rule 50.  Id. at 189 (quotation marks omitted).  And although the Court in Ortiz refused to "permit petitioners to appeal an order denying summary judgment after a full trial on the merits" because the issues presented by the appeal were factual, it did so "without addressing whether an appeal may lie from a denial of summary judgment when the asserted error is purely one of law because the questions raised on appeal did not present 'neat abstract issues of law.'" Stampf, 761 F.3d at 201 n.2.

The issue left unaddressed in Ortiz was addressed by our decision in Schaefer v. State Insurance Fund, 207 F.3d 139 (2d Cir. 2000).  There we considered an appeal of a denial of summary judgment where the challenged error was purely one of law rather than one that involved some fact-based issue.  See id. at 142; see also Steinman, supra, at 918 (explaining that this Court in Schaefer "declared the rule" that a denial of summary judgment is reviewable after a trial where the district court's error was purely one of law).  Likewise in Rothstein v. Carriere, 373 F.3d 275 (2d Cir. 2004), we asserted that

a Rule 50 motion is <u>not</u> required to preserve a challenge to a district court's denial of summary judgment following a trial if the denial is based on a question of law. <u>See</u> <u>id.</u> at 284.

Why can a party appeal such a denial even after a full trial on the merits? Because "purely legal issues capable of resolution with reference only to undisputed facts . . . typically involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." <u>Ortiz</u>, 562 U.S. at 190 (quotation marks omitted). A "Rule 50 motion is required to preserve a challenge to sufficiency of the evidence because once a trial has occurred, the focus is on the evidence that was actually admitted at trial." <u>Rothstein</u>, 373 F.3d at 284. But "where the trial court's denial of a summary judgment motion is not based on the sufficiency of the evidence, but on a question of law, the rationale behind Rule 50 does not apply, and the need for such an objection is absent." <u>Id.</u> (citing <u>Chemetall GMBH v. ZR Energy, Inc.</u>, 320 F.3d 714, 718–20 (7th Cir. 2003)).

Until now, we have never deviated from this easily administered rule: "In general, where summary judgment is denied and the movant

subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed . . . . We have recognized an exception to this rule and permitted appeals from the denial of summary judgment after a full trial on the merits where the district court's error was purely one of law." Stampf, 761 F.3d at 201 n.2 (quotation marks omitted). Period.[3] We have never suggested, as the majority opinion does today, that the "pure issue of law" exception is confined to cases where the "two alternative paths to review"—interlocutory appeal and a Rule 50 motion—"[are not] available." Majority Op. at 11–12.

In fact, in Rothstein, we held the opposite. See Rothstein, 373 F.3d at 284. So even if the majority were right that requiring appellants to appeal a Rule 50 motion is more "desirable" than permitting parties to appeal a denial of summary judgment after trial where the purported error is one of law, see

---

[3] The majority opinion wrongly asserts that I support a novel "rule that all denials of summary judgment—save only those 'tightly focused' on the sufficiency of the evidence—are in fact always appealable following a trial on the merits." See Majority Op. at 14. That is a complete exaggeration. The "rule" that I support prohibits review of denials of summary judgment involving fact-based challenges but simultaneously permits parties to appeal denials of summary judgment involving purely legal challenges. That narrow approach has been our Court's rule, not just mine, for two decades.

Majority Op. at 15, "[w]e cannot steer around binding precedent even were we not to agree with it," see Dale v. Barr, 967 F.3d 133, 145 (2d Cir. 2020). Only our Court sitting in banc, not a three-judge panel, can do that. By ignoring this important restriction and barreling forward with a decision that contradicts binding precedent, my colleagues in the majority have created an intra-circuit split that will ultimately need to be resolved. See Fed. R. App. P. 35(a)(1).

Turning to this case, Canal's appeal of the denial of summary judgment presents a purely legal question that we have the power to review. Canal argues that in denying its summary judgment motion the District Court improperly used a general knowledge standard rather than the specific knowledge standard required under Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93 (2d Cir. 2010). The challenge thus falls under the line of precedent that includes Schaefer and Rothstein and is reviewable even if Canal could have pursued an interlocutory appeal or filed a Rule 50 motion.

II

The majority opinion commits one more needless error. It purports to "hold" in the alternative that Canal was required to file a notice of appeal within thirty days of the entry of the denial of summary judgment. There are two problems with this.

A

First, the conclusion is entirely unnecessary to resolve this appeal and is thus dicta. Simply asserting that a result is "independently require[d]" or a "holding" does not make it so. As Judge Friendly once explained, "[a] judge's power to bind is limited to the issue that is before him; he cannot transmute dictum into decision by waving a wand and uttering the word 'hold.'" United States v. Rubin, 609 F.2d 51, 69 n.2 (2d Cir. 1979) (Friendly, J., concurring). In response, the majority opinion suggests that its decision rests on "two or more grounds," one of which is its conclusion about Canal's obligation to file a notice of appeal, an issue not briefed by either party. See Majority Op. at 10 n.4. The majority defends this view on the theory that Canal argued generally that it was entitled to summary judgment. See id. In other words, the

8

majority implies, it was required to decide the complex—and disputed—issue of our jurisdiction before it could review Canal's substantive entitlement to summary judgment. See id. This theory has been so thoroughly debunked in recent prior published decisions that I will not take more time to do so yet again here. See, e.g., Butcher v. Wendt, 975 F.3d 236, 241–44 (2d Cir. 2020).

In any event, as the majority itself makes clear, there is but one decision necessary to resolve this appeal, and in reaching beyond that decision to an alternative "holding" the majority opines on issues beyond the issue that is before us. To see what I mean, recall how the majority opinion introduces the notice of appeal issue. "[E]ven if the district court's denial of Canal's summary judgment motion qualified for an exception allowing review," it asserts, Canal failed to timely file a notice of appeal. See Majority Op. at 11. But the majority opinion had already decided that the denial under consideration does not qualify for an exception allowing review. See id. There was therefore no need whatsoever to add that the notice of appeal should have been filed at a particular time. Had the majority adopted the opposite proposition—namely, that the notice of appeal need not be filed

9

within thirty days of the denial of summary judgment—the result and rationale of the majority opinion would have remained the same. The proposition is thus superfluous—a telltale feature of dictum. Our colleague Judge Leval made this point in his seminal article on dicta:

> To identify dictum, it is useful to turn the questioned proposition around to assert its opposite . . . . If the insertion of the rejected proposition into the court's reasoning, in place of the one adopted, would not require a change in either the court's judgment or the reasoning that supports it, then the proposition is dictum. It is superfluous. It had no functional role in compelling the judgment.

Pierre N. Leval, Judging Under the Constitution: Dicta About Dicta, 81 N.Y.U. L. Rev. 1249, 1257 (2006); see also Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011).[4]

                                        B

     Second, dicta or not, the majority's conclusion on the notice of appeal issue is legally wrong. Initially, the majority recites the unremarkable proposition that a denial of summary judgment is not immediately appealable

_____

[4] Even if the majority's discussion of the notice of appeal fell into some gray zone between holding and dicta, "it is unclear to what degree a future court should consider itself bound by" that discussion because we "give less careful attention to propositions uttered in support of unnecessary alternative holdings." Leval, supra, at 1258 n.23.

because it is not a final judgment, see Soto v. Gaudett, 862 F.3d 148, 157 (2d Cir. 2017), but that an exception exists for denials of summary judgment based on claims of immunity that are purely legal in nature, see id.; Bolmer v. Oliveira, 594 F.3d 134, 140 (2d Cir. 2010).  But the majority opinion then takes a wrong turn.  It concludes that even if we could review the denial of summary judgment under this exception, our review would be foreclosed here because Canal failed to file a notice of appeal within thirty days after the entry of the order.  Because this appeal deadline is jurisdictional, the majority opinion claims, "it independently requires us to dismiss Canal's challenge to the denial of summary judgment."  Majority Op. at 11.[5]

---

[5] The majority relies on Ortiz, 562 U.S. at 189, discussed above, to assert that Canal should have filed its notice of appeal within thirty days of the District Court's order denying summary judgment.  See Majority Op. at 10–11.  But Ortiz is inapposite because it involved the unique circumstance of a denial of summary judgment in the context of a qualified immunity defense.  In that context, of course, a denial of summary judgment is immediately appealable if the challenge is based on a pure question of law.  See Mitchell v. Forsyth, 472 U.S. 511, 525–26 (1985).  The majority misreads Ortiz to suggest that a party must always file a notice of appeal of a denial of summary judgment within thirty days after the order is issued, even outside the context of qualified immunity.  In fact, Ortiz's holding suggests a much more limited conclusion: a notice of appeal in which the party raises purely legal questions arising from the denial of summary judgment based on qualified immunity must be filed within thirty days.  See Steinman, supra, at 938; id. at 927 n.119 ("In Ortiz, the Court explicitly did not decide whether, after final judgment, a losing litigant could appeal

An obvious problem with this analysis is that Canal's challenge to the denial of summary judgment does not fall within the immunity exception, so that filing a notice of appeal immediately after the District Court's denial of summary judgment here would have been futile. But if the denial of summary judgment was never immediately appealable, then our jurisdictional deadline for filing a notice of appeal could not possibly justify dismissing Canal's appeal of the denial.

Another problem with the analysis: The majority opinion acknowledges that denials of summary judgment after a full trial on the merits are also not appealable except when the alleged error is purely one of law. See Majority Op. at 11. Yet this does not tell anyone, let alone Canal, when Canal should have filed its notice of appeal. The majority sometimes signals that Canal should have filed a protective notice of appeal to avoid dismissal for late filing, even though, as noted, there is no benefit to filing a notice of appeal of

---

a denial of summary judgment that raised only questions of law; it decided instead that here the officials' claims of qualified immunity did not present purely legal issues capable of resolution with reference only to undisputed facts, and that—in that circumstance—the denial of summary judgment was not appealable after trial on the merits." (quotation marks omitted)). This conclusion has no relevance to orders that, although reviewable upon appeal, are not immediately appealable.

an interlocutory order that is not appealable because doing so would result only in a dismissal of the appeal for lack of subject matter jurisdiction. See Berlin v. Renaissance Rental Partners, LLC, 723 F.3d 119, 127–28 (2d Cir. 2013) (only premature notices of appeal that have "ripen[ed]" are reviewable appeals); O & G Indus., Inc. v. Nat'l R.R. Passenger Corp., 537 F.3d 153, 167 (2d Cir. 2008) (a non-quantified award of attorneys' fees is non-final and the appeals court was required to dismiss this portion of the appeal for lack of appellate jurisdiction); United States v. Rodgers, 101 F.3d 247, 252 (2d Cir. 1996) (defendant's appeal of a non-final judgment was "premature" and therefore a "nullity").  The majority opinion elsewhere signals that Canal might have waited to file a notice of appeal until the entry of a final judgment. Of course, that is what Canal did, only to have the majority dismiss its challenge to the denial of summary judgment for failure to file the notice of appeal within thirty days of the denial.  See Majority Op. at 11.

Consider the impact of the majority's "guidance" in this case.  Had Canal filed a notice of appeal within thirty days of the denial of its summary judgment motion but prior to the entry of final judgment, we would have

dismissed the appeal for lack of jurisdiction. Canal would then have been required to wait for entry of a final judgment before filing a new notice of appeal and consuming more judicial time, only to then have its appeal dismissed once again for failure to timely file a notice an appeal. The majority's inability to provide clear answers on these important procedural issues, compounded by its novel legal error, risks significantly burdening our docket by spurring parties in Canal's position to file protective notices of appeal even though those appeals are likely to be dismissed.

Respectfully, this is not a sustainable way to administer procedural rules and justice for real litigants in real cases.

                                    III

Unfortunately, the majority opinion does not even attempt to square its decision with our prior decisions in Schaefer and Rothstein. As explained above, in both cases we held that a party may appeal a denial of summary judgment after a full trial on the merits if the purported error is one of law, without reference to whether an interlocutory appeal or a Rule 50 motion could have been filed. Indeed, in Rothstein we affirmatively held that a Rule

50 motion is not required to preserve an appeal from the denial of summary judgment if the challenged error is one of law.  Rothstein, 373 F.3d at 284.

Although the majority opinion stands in direct conflict with both decisions, my colleagues have elected to ignore them, apparently in the belief that they are bound by neither.  See Schaefer, 207 F.3d at 142; Rothstein, 373 F.3d at 284.  Of course, as with so much else in Part I of the majority opinion, that is wrong too.  Every panel of our Court is "bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court."  United States v. Wilkerson, 361 F.3d 717, 732 (2d Cir. 2004).

Consistent with Schaefer and Rothstein, Canal's appeal of the denial of summary judgment presents a purely legal issue and the notice of appeal was filed within thirty days of the final judgment in this case.  Nothing more was required to ensure that we have jurisdiction to review the appeal.  I would therefore affirm the District Court's judgment for the reasons set forth in Part II of the majority opinion, rather than dismiss the appeal for lack of jurisdiction.

For these reasons I respectfully dissent from Part I of the majority opinion and otherwise concur.