**Wright v City of New York**

2025 NY Slip Op 31191(U)

April 9, 2025

Supreme Court, New York County

Docket Number: Index No. 156038/2019

Judge: Ariel D. Chesler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ARIEL D. CHESLER** | **PART** | **51M** |

*Justice*

-----------------------------------------------------------------------------X

OMAR WRIGHT,

                        Plaintiff,

               - v -

THE CITY OF NEW YORK, POLICE OFFICER MILES
HOLMAN-Shield No. 31489, POLICE OFFICER DANIEL
FELDMAN and JOHN DOES-Police Officers as yet
unidentified,

                        Defendants.

-----------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 156038/2019 |
| **MOTION DATE** | 01/23/2024 |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62

were read on this motion to/for                JUDGMENT - SUMMARY        .

Upon the foregoing documents, defendants move for an order that

1) Grants CPLR § 3212 summary judgment dismissing the third and fourth causes of action, for false arrest and false imprisonment, respectively;
2) Grants CPLR §§ 3211 and 3212 dismissal of the sixth cause of action for malicious prosecution;
3) Grants CPLR §§ 3211 and 3212 dismissal of the second cause of action for negligent hiring, training, retention, and supervision;
4) Grants CPLR §§ 3211 and 3212 dismissal of the fifth cause of action for intentional and negligent infliction of emotional distress;
5) Grants dismissal of the seventh cause of action under CPLR §§ 3211 and 3212;
6) Grants dismissal of the eighth cause of action under CPLR §§ 3211 and 3212; and
7) Grants dismissal of the entire complaint against the John Doe defendants under CPLR §§ 3125 (c), 1024, and 306 (b).

      Plaintiff Omar Wright ("Mr. Wright") does not oppose dismissal of the second, fifth, and

seventh causes of action and does not oppose dismissal of all claims against the John Doe

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 1 of 12**

[* 1]

defendants. His opposition papers also do not challenge the application for dismissal of the eighth cause of action. However, Mr. Wright opposes dismissal of the third, fourth, and sixth causes of action, and he notes that defendants do not seek dismissal of first cause of action for assault and battery. The court resolves the motion below.

## Background

As is relevant here, the complaint alleges that on August 1, 2018, when Mr. Wright was at or near the intersection of Greenwich Street and Battery Place in Manhattan, defendant police officers Miles Holman and Daniel Feldman ("the officers") assaulted and battered him without probable cause. On August 1, 2018 and thereafter, the police officers arrested and confined Mr. Wright without probable cause and without an arrest warrant, and subsequently confined him based on the allegedly improper arrest. Further, on August 1, 2018 and thereafter, the police officers "created and submitted an erroneous police report in an effort to cover up the aforesaid and initiate a prosecution in bad faith" (NYSCEF Doc. No. 48 [Complaint], ¶ 33). The complaint alleges at all times, the police officers acted within the scope of their duties, and that due to the police officers' actions, Mr. Wright sustained serious physical injuries, along with mental anguish, damage to his reputation, and loss of employment opportunities, and that he incurred legal fees. Ultimately, at his October 17, 2018 arraignment, the charges against him were dismissed as legally insufficient (NYSCEF Doc. No. 56).

More specifically, defendants allege that on the date in question Mr. Wright was located around the intersection of Greenwich Street and Battery Place, working as a ticket sales agent for View NYC (NYSCEF Doc. No. 45, ¶ 2 [statement of material facts], citing NYSCEF Doc. No. 49 [50-h hearing transcript], p 7 lines 8-14) when Officer Holman approached him and asked for his license. Defendants contend that, more specifically, the officers asked for his vendor's

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 2 of 12**

2 of 12

[* 2]

license, which was required in order to engage in sales activity. In their affirmation in support of their motion, defendants first argue that the officers had reasonable suspicion and probable cause to stop and detain Mr. Wright because they observed him vending in the Battery Park area. According to defendants, this gave them reasonable suspicion that he had violated New York City Administrative Code § 20-556 (g), which states that "[n]o ticket seller shall vend within the geographical areas under the jurisdiction or control of the department of parks and recreation unless written authorization therefor has been obtained from the commissioner of parks and recreation."

Additionally, because of Mr. Wright's proximity to Battery Park, the officers allege that they also suspected he was in violation of New York City Park Rules & Regulations §1-05(b)(3)(ii), which precludes vendors of expressive matter from vending in Battery Park and its perimeter sidewalks "unless they vend at the specifically designated spots for such vending on the accompanying maps and in compliance with all other applicable Department rules . . ." (*id.* §1-05 [b] [3]). At his deposition, Officer Holman contends that when he first noticed Mr. Wright, the latter was not on a pathway inside the park but was on a perimeter sidewalk, near the 4/5 train station, and he was trying to sell tickets to a tourist. Officer Holman testified that he approached Mr. Wright, telling him to "stop, I'm going to give you a summons for vending in the park" (NYSCEF Doc. No. 50, p 26 lines 11-12).

According to the officer, Mr. Wright responded that he was not vending but going to the nearby Starbucks. The officer doubted his story and therefore demanded his Department of Consumer Affairs license, which was on a lanyard around his neck.[1] In response, however, Mr.

---

[1] Under New York City Administrative Code § 20-554 (c), "[e]ach ticket seller shall wear their ticket seller license conspicuously at all times while engaged in vending and shall exhibit such license upon demand to any police officer, peace officer, or other authorized officer or employee of the department or other city agency."

**156038/2019  WRIGHT, OMAR vs. CITY OF NEW YORK**
 **Motion No.  003**

**Page 3 of 12**

[* 3]

Wright allegedly took off the lanyard and attempted to walk away. Officer Holman stated that Mr. Wright accused him of grabbing his neck, which Officer Holman immediately denied. When, later, he told Officer Feldman what had happened, Officer Feldman instructed him to go after Mr. Wright in the ambulance rather than let him leave the scene. Officers Holman and Feldman entered the ambulance, and they told him that either they would issue a summons and then he would be able to go to the hospital or they would arrest him and take him to the precinct before he would be sent to the hospital. Again, Mr. Wright allegedly refused to provide his ID, and therefore the officers arrested him. According to Officer Holman, Mr. Wright fought their attempts to handcuff him, "stiffening his arms, trying to cross them across his body and not trying to be handcuffed" (*id.*, p 31 lines 22-24). He states that the officers had to restrain him to put on the handcuffs.

According to defendants, Mr. Wright did provide his license to the EMT in the ambulance. Through the EMT, the officers acquired access to it. At this point, the officers issued Mr. Wright a summons for "wearing an expired DCA, Ticket Seller License" (NYSCEF Doc. No. 51), removed his handcuffs, and left the ambulance. Officer Holman denies grabbing Mr. Wright's neck or engaging in any physical contact other than handcuffing him.

Officer Feldman had a less complete recollection of Mr. Wright, as his contact with him was more limited. However, he stated,

> "I remember going onto the ambulance with Officer Holman trying to speak to the defendant to try to get his identification to give him a summons. I just remember -- I don't remember exactly how long, but he still refused.
> I explained to him that we . . . needed his ID in order to give him a summons, and when somebody doesn't give us their ID, they have to be brought back to the precinct to verify who they are, they get issued a summons from the precinct, and then they leave.
> He continually did not give us his ID so I explained to him that he has to be put in handcuffs at that point because we don't transport

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 4 of 12**

4 of 12

anybody whether it be a summons or an arrest to a precinct unless they are in handcuffs.

He resisted, and then at that point, I remember I pulled over one of my other cops. . . . [E]ventually [he] did give his ID, and then he eventually was given a summons and sent on his way.

That's all I remember really" (NYSCEF Doc. No. 54, p19 line 4 – p 20 line 8).

According to Officer Feldman, Mr. Wright resisted the handcuffs by "[f]lailing his arms" (*id.*, p 23 line 4). Officer Feldman also clarified that Mr. Wright was not charged with resisting arrest.

Mr. Wright alleges that, contrary to defendants' allegations, he was not vending at the time of the arrest. Instead, he was on his break and on his way to buy a Caramel Frappuccino at Starbucks (*see, e.g.*, NYSCEF Doc. No. 53, p 14 lines 19-20). Although he was not working at the time, he still wore his vendor's license around his neck. He stated that he explained it to the officer and refused to show him the license, at which point Officer Holman grabbed the license and tried to pull it off his neck, grabbing a piece of his shirt in the process. Mr. Wright contended, "So he pulled me towards him like he was pulling the ID off and my neck jerked back" (*id.*, p 24 lines 20-22). The rough treatment allegedly resulted in injuries, and his brother-in-law called an ambulance to the scene.[2]

As stated, Officer Feldman and other officers arrived at the scene around the same time as the ambulance. According to Mr. Wright, within no more than two minutes of the time he entered the ambulance, Officer Feldman and another officer walked in. Mr. Wright further contends that the EMS worker placed a brace on his neck and began asking him questions, but that Officer Feldman interfered with the EMT treatment, grabbing him and demanding his id. In addition, he acknowledges that the officers issued an ultimatum, threatening to arrest him if he did not produce his license. Mr. Wright states that at this point he complied with the demand by

---

[2] As a result, he alleges that he sustained a herniated disc.

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 5 of 12**

putting down his license (*see id.*, p 32 line 9). Nevertheless, Mr. Wright contends, the officers arrested him. Moreover, when they did so, they allegedly twisted his right hand and handcuffed him in such a way that he sustained lacerations to his wrist. After this, Mr. Wright states, the officers grabbed his license – and, as Officer Holman states -- they issued a summons to him, took off the handcuffs, and exited the truck. He estimates that the total incident lasted around a half hour, and that he was in handcuffs for around three minutes.

**Discussion**

Initially, while dismissal is not opposed, the second, fifth, seventh and eighth causes of action must be dismissed. The second cause of action for negligent hiring and retention is dismissed as the individual officers were acting within the scope of their employment (*see Ashley v City of New York*, 7 AD3d 742, 743 [2nd Dept 2004]). The fifth cause of action is dismissed because a cause of action for intentional infliction of emotional distress may not be brought against a municipality (*see Dillon v City of New York*, 261 AD2d 34, 41 [1st Dept 1999]). Nor can it lie where the alleged misconduct falls within the scope of another tort, such as false arrest or malicious prosecution. The seventh cause of action is supported only by conclusory allegations and is dismissed for failure to sufficiently plead factual allegations to sustain a *Monell* claim (*see Ashcroft v. Iqbal*, 129 S. Ct. 1937 [2009]). The eighth cause of action must be dismissed as the City of New York is not subject to punitive damages (*see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.,* 70 NY2d 382, 386 [1987]).

Further, while unopposed, the Court notes that dismissal must be granted as against the John Doe defendants as such claims are now time barred and plaintiff has made no diligent efforts to identify the defendants (see CPLR 1024; *Hogan v. Fischer*, 738 F.3d 509, 519 [2d Cir. 2013]).

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**                                    **Page 6 of 12**
    **Motion No.  003**

6 of 12

[* 6]

The three causes of action still at issue are the third cause of action for false arrest, the fourth cause of action for false imprisonment, and the sixth cause of action for malicious prosecution. To succeed on a cause of action for false arrest or false imprisonment, the plaintiff "must show that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to it, and that the confinement was not otherwise privileged" (*Roberts v City of New York*, 171 AD3d 139, 145-146 [1st Dept 2019] [internal quotation marks and citation omitted]). Malicious prosecution, as the name suggests, involves a criminal action. The defendant must have commenced or continued the criminal case against the plaintiff; the plaintiff must have prevailed in the criminal proceeding; there must have been no probable cause for the proceeding; and the defendant must have acted with actual malice (*id.* at 146).

Initially, the court denies the portion of defendants' motion that relies on CPLR § 3211. Although the notice of motion includes CPLR § 3211 as one of the bases of the current motion and defendants cite to the legal standard in their affirmation in support (*see* NYSCEF Doc. No. 46, ¶¶ 31-32), they do not raise any arguments as to the sufficiency of the pleadings. Instead, their arguments relate to the purported evidentiary bases for dismissal, including documents such as deposition transcripts, which are properly considered under CPLR § 3212.

Accordingly, the court turns to the summary judgment prongs of the motion. The lack of probable cause is a necessary element of claims of false arrest, false imprisonment, and malicious prosecution. Therefore, the existence of probable cause constitutes a complete defense to all three (*see DelGrosso v McCann*, 203 AD3d 596, 597 [1st Dept 2022]). "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being

156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK
Motion No.  003

Page 7 of 12

7 of 12

[* 7]

committed by the suspected individual" (*De Lourdes Torres v Jones*, 26 NY3d 742, 759 [2016] [internal quotation marks and citation omitted]). Moreover, courts assess probable cause based on the totality of the circumstances (*id.*). "Where there is conflicting evidence concerning the existence of probable cause to arrest the plaintiff, from which reasonable persons might draw different inferences, the question is one for the jury" (*Mendez v City of New York*, 137 AD3d 468, 470 [1st Dept 2016]).

Defendants' primary argument here is that the officers had reasonable suspicion and therefore probable cause for the arrest of Mr. Wright. They base their position on their allegation that Officer Holman saw Mr. Wright vending at the time of his demand to see Mr. Wright's license. According to defendants, the officer knew Mr. Wright was vending because he observed him "[s]tanding in front of the tourists, showing them paperwork, talking to them" (NYSCEF Doc. No. 50, p 25 lines 4-5). This allegedly gave the officer sufficient cause to ask for Mr. Wright's vendors license (*see* New York City Administrative Code § 20-554).

The court denies this prong of defendants' motion. Under the facts as stated, defendants have shown a prima facie case for dismissal. However, Mr. Wright adamantly contests their version of the facts. Significantly, he states that he was not selling tickets with a female when Officer Holman approached him but heading to Starbucks with his cousin, a male. He further argues that he was on his break and therefore not working at the time. Both Mr. Wright and Officer Holman acknowledge that Mr. Wright made this representation to the officer. The officer simply did not believe him. The Administrative Code provision on which defendants rely, section 20-554, states that vendors must wear their ticket seller licenses "while engaged in vending" and exhibit their licenses if a police officer demands its production. It does not require such production when the vendors are not working, and here, considering the facts in the light

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 8 of 12**

8 of 12

most favorable to Mr. Wright (*see Brown v City of New York*, 798 F3d 94, 98 [2d Cir 2015]), there is a dispute as to whether Mr. Wright was vending at the time of his arrest.

"The existence or absence of probable cause is only to be decided by the court where there is no real dispute as to the facts or the proper inferences to be drawn therefrom" (*see Vizcaino v City of New York*, 201 AD3d 538, 539 [1st Dept 2022] [internal quotation marks and citation omitted]). The "accounts of the incident given by plaintiff and the officers differ in significant respects," thus creating an issue of fact as to probable cause (*Reese v City of New York*, 203 AD3d 448, 449 [1st Dept 2022]). As false arrest, false imprisonment, and malicious prosecution all hinge on the existence of probable cause, therefore, dismissal is inappropriate (*see Idelfonso v City of New York*, 187 AD3d 576, 577 [1st Dept 2020]).

Defendants argue that even if the court finds an issue exists with respect to probable cause, the principle of qualified immunity requires a dismissal of the claims against the officers. The court rejects this argument. Qualified immunity protects police officers where probable cause exists (*see Tiburcio v City of New York*, 172 AD3d 455, 456 [1st Dept 2019]). As there is an issue of fact regarding probable cause, therefore, qualified immunity does not mandate dismissal at this time.

Finally, the court rejects defendants' argument that the claim for malicious prosecution is not viable because the summons did not constitute a prosecution. Defendants are correct that malicious prosecution only exists where a criminal or civil proceeding or action was commenced against the plaintiff (*see Scollar v City of New York*, 160 AD3d 140, 148 [1st Dept 2018]). Here, defendants issued Mr. Wright a summons (NYSCEF Doc. No. 51); and, upon his arraignment in criminal court, the case was dismissed against him as legally insufficient (NYSCEF Doc. No. 56). Defendants rely on *Lacey v Yates County*, 30 F Supp 3d 213 [WD NY 2014]) for the

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 9 of 12**

[* 9]

proposition that, because the case was dismissed, there was no prosecution. However, *Lacey* is distinguishable in many critical respects. First, in *Lacey*, the plaintiff was indicted for felony assault and menacing in the second degree, following a grand jury hearing, and the charges ultimately were dismissed. Second, and most significantly, the judge in *Lacey* found that the plaintiff adequately pled that the defendant initiated a proceeding (*id.* at 222).

There is a dearth of caselaw in New York concerning whether the issuance of a summons, without more, suffices to support a malicious prosecution claim. Several cases have held that the issuance of a desk appearance ticket (DAT) suffices to support a claim for malicious prosecution because of the requirement that the plaintiff who receives the DAT must appear in court (*e.g.*, *Allen v Town of Colonie*, 182 AD2d 998 [3d Dept 1992]; *Snead v Aegis Sec., Inc.*, 105 AD2d 1059, 1060 [4th Dept 1984]). Relying on this precedent, the Second Circuit found that a DAT "under New York law, the issuance of a DAT sufficiently initiates a criminal prosecution (*Stampf v Long Island R. Co.*, 761 F3d 192, 199 [2d Cir 2014]; *see also Sosa v City of New York*, 2015 NY Slip Op 51871 [U], *4-5 [Sup Ct, Bronx County 2015] [following *Stampf*]).

The Second Circuit's decision in *Rosario v Amalgamated Ladies' Garment Cutters' Union, Local 10, I.L.G.W.U.*, 605 F2d 1228, 1250 (2d Cir. 1979), suggests that this applies in the context of the summons at hand. The *Rosario* Court reasoned that, when a DAT is issued, "the accused bears the inconvenience and expense of appearing in court and, perhaps more important, is subject to the anxiety induced by a pending criminal charge" (*id.*) and that the impact may be "just as severe as that of a summons" (*id.*). Thus, it concluded that a DAT "commences a prosecution for purposes of determining whether an action for malicious prosecution lies" (*id.*). Here, too, Mr. Wright had to appear in court and possibly face a criminal charge. The similarities require a finding that the summons comprised the initiation of a judicial proceeding for the

**156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 10 of 12**

10 of 12

purposes of a malicious prosecution claim (*see Beckford v City of New York*, Index No. 16cv7486, US Dist Ct, SDNY, Apr. 1, 2019, Cote, J., *6 ["It is true that New York courts have not yet held that a summons initiates a criminal proceeding. But, in determining that the issuance of a desk appearance ticket ("DAT") initiates a criminal prosecution, courts have assumed that a summons does as well."]).[3]

Accordingly, it is

ORDERED that the motion is granted to the extent of severing and dismissing the second, fifth, seventh, and eighth causes of action and of severing and dismissing the claims against the John Doe defendants; and it is further

ORDERED that the remainder of the motion is denied, and the first, third, fourth, and sixth causes of action remain active; and it is further

ORDERED that the caption is amended to read:

OMAR WRIGHT,

        Plaintiff,

-against-                Index No. 156038/2019

THE CITY OF NEW YORK, POLICE OFFICER MILES HOLMAN-Shield No. 31489, and POLICE OFFICER DANIEL FELDMAN,

        Defendants.

And it is further

---

[3] In *Royal v New York City Hous. Auth.* (127 AD3d 534, 535 [1st Dept 2016]), the First Department found that the issuance of an appearance ticket did not constitute a prosecution because the plaintiff was not arrested.

**156038/2019  WRIGHT, OMAR vs. CITY OF NEW YORK**
**Motion No.  003**

**Page 11 of 12**

11 of 12

ORDERED that plaintiff shall file a copy of this order with the Trial Support and Motion Support Clerks, who are directed to amend the caption accordingly, and the parties shall use the amended caption in all subsequent court papers.

This constitutes the decision and order of this Court.

4/9/2025
**DATE**

_20250409150412ACHESLERC2771F94E804224A107199EAB5F3D42_

**ARIEL D. CHESLER, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

156038/2019   WRIGHT, OMAR vs. CITY OF NEW YORK
Motion No.  003

Page 12 of 12

12 of 12

[* 12]